**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

ARON REYNOLDS, individually and on behalf of all others similarly situated,

               Plaintiff,

     vs.

CITADEL SECURITIES LLC and VIRTU AMERICAS LLC,

               Defendants.

Case No. 1:26-CV-24485-RKA

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF**
**<u>MOTION TO TRANSFER</u>**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................................................................1

BACKGROUND ....................................................................................................................4

    A.    Genius ...................................................................................................4

    B.    Defendants .............................................................................................4

    C.    Reynolds ...............................................................................................4

    D.    Plaintiff's Counsel Commences the *Genius* Action and Genius Moves for Lead Plaintiff Appointment...................................................................5

    E.    Judge Caproni Denies Genius's Lead Plaintiff Application and Rejects Plaintiff's Counsel's Attempt to Restart the PSLRA Application Process..............5

    F.    Plaintiff's Counsel Voluntarily Dismisses the *Genius* Action and Instantly Files Suit in this Court ............................................................8

ARGUMENT .........................................................................................................................9

I.    THIS ACTION SHOULD BE TRANSFERRED TO JUDGE CAPRONI IN THE SOUTHERN DISTRICT OF NEW YORK...................................................................9

    A.    All Factors Under the "First-to-File" Rule Weigh in Favor of Transfer .................9

        1.    The *Genius* Action Was Filed More Than Seven Months Before This Action..................................................................................10

        2.    The Parties Are Substantially Similar...........................................11

        3.    Both Actions Involve Substantially Identical Issues ...............................13

    B.    No Compelling Circumstances Warrant an Exception from the First-to-File Rule...................................................................................14

    C.    Transfer Is Also Appropriate Under 28 U.S.C. § 1404(a)....................................14

        1.    The Claims Against Defendants Could Have Been Brought in the Southern District of New York ....................................................15

        2.    Transfer Would Serve the Interest of Justice ............................................15

CONCLUSION.....................................................................................................................17

REQUEST FOR HEARING....................................................................................................17

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abreu v. Pfizer, Inc.*,
  2022 WL 2355541 (S.D. Fla. June 22, 2022) ............................................................. 11, 14, 16

*Camacho v. United States*,
  2019 WL 6130441 (S.D. Fla. Nov. 19, 2019).................................................................. 15, 16

*Chaban Wellness LLC v. Sundesa, LLC*,
  2015 WL 4538804 (S.D. Fla. July 27, 2015)............................................................................ 14

*City of Birmingham Firemen's & Policemen's Supplemental Pension Sys. v. Pluralsight, Inc.*,
  2019 WL 12496341 (S.D.N.Y. Oct. 24, 2019) ......................................................................... 17

*Cole v. United Healthcare Ins. Co.*,
  2019 WL 13256100 (S.D. Fla. Oct. 28, 2019)........................................................................... 13

*Collegiate Licensing Co. v. Am. Cas. Co. of Reading, Pa.*,
  713 F.3d 71 (11th Cir. 2013) .................................................................................................... 10

*Culp v. Gainsco, Inc.*,
  2004 U.S. Dist. LEXIS 22390 (S.D. Fla. Sept. 22, 2004) ........................................................ 16

*Elliott v. Williams*,
  549 F. Supp. 3d 1333 (S.D. Fla. 2021) ............................................................................... 10, 15

*Garity v. Tetraphase Pharms. Inc.*,
  2019 WL 2314691 (S.D.N.Y. May 30, 2019) ........................................................................... 17

*Goldstein v. Beliv, LLC*,
  2022 WL 16540185 (S.D. Fla. Oct. 28, 2022).................................................................... 12, 13

*In re Target Corp. S'holder Class Action Litig.*,
  2025 WL 3187126 (M.D. Fla. Nov. 14, 2025) .......................................................................... 17

*IoT Innovations LLC v. Lutron Elecs. Co.*,
  2026 WL 860531 (S.D. Fla. Mar. 30, 2026).......................................................................10, 11

*Kelly v. Gerber Prods. Co.*,
  2021 WL 2410158 (S.D. Fla. June 11, 2021) .................................................................... 10, 13

*Manuel v. Convergys Corp.*,
  430 F.3d 1132 (11th Cir. 2005) .......................................................................................... 14, 15

*Maxon v. Sentry Life Ins. Co.*,
   2018 WL 3850011 (M.D. Fla. Apr. 11, 2018) ........................................................................ 17

*Michael Kors, LLC v. Chunma USA, Inc.*,
   2016 WL 11020246 (S.D. Fla. Feb. 23, 2016) ................................................................. 14, 15

*MSP Recovery Claims Series 44, LLC v. Pfizer, Inc.*,
   2022 WL 17484308 (S.D. Fla. Nov. 10, 2022) ................................................................ 12, 13

*Reyes v. Trans Union, LLC*,
   2024 WL 4751408 (S.D. Fla. Nov. 12, 2024) ........................................................................ 11

*Rojas v. Am. Honda Motor Co.*,
   2019 WL 6324616 (S.D. Fla. Nov. 26, 2019) ........................................................... 13, 14, 16

*Sorensen v. Am. Airlines, Inc.*,
   2022 WL 2065063 (S.D. Fla. June 8, 2022) ......................................................................... 16

*Vyas v. Taglich Bros., Inc.*,
   2023 WL 5938355 (M.D. Fla. Sept. 12, 2023) ................................................................ 11, 12

*Women's Choice Pharms., LLC v. Rook Pharms., Inc.*,
   2016 WL 6600438 (S.D. Fla. Nov. 8, 2016) ......................................................................... 10

*Zampa v. JUUL Labs, Inc.*,
   2019 WL 1777730 (S.D. Fla. Apr. 23, 2019) ................................................................. 11, 12

**Other Authorities**

15 U.S.C. § 78u-4(a)(3)(A) ..................................................................................................... 5

28 U.S.C. § 1404(a) ....................................................................................................... 3, 14, 15

Defendants Citadel Securities LLC ("Citadel Securities") and Virtu Americas LLC ("Virtu") respectfully submit this memorandum of law in support of their motion to transfer this action to the Southern District of New York.

## PRELIMINARY STATEMENT

This case is a brazen attempt by Plaintiff's counsel to skirt a federal judge's decision.  The same three law firms representing Plaintiff in this action previously filed a nearly identical putative class action in November 2025 against Citadel Securities and Virtu in the Southern District of New York captioned *Genius Group Limited v. Citadel Securities LLC*, No. 1:25-cv-9546 (S.D.N.Y.) (the "*Genius* Action").  There, Judge Valerie E. Caproni denied a motion to appoint a lead plaintiff and to appoint Plaintiff's counsel here as "Lead Counsel."  The Court also denied Plaintiff's counsel's request to reopen the lead plaintiff appointment process and held that the case could not proceed as a class action because it "smacks of the sort of lawyer-driven litigation" prohibited by statute.  Rather than continue to litigate the case as an individual action, Plaintiff's counsel sought to voluntarily dismiss the *Genius* Action and refiled the same case in this jurisdiction, once again styled as a class action and with a new putative lead plaintiff.  But Plaintiff's counsel cannot circumvent an adverse ruling by filing in a different forum.  This Court should reject this improper gamesmanship and require that this case be transferred to Judge Caproni in the Southern District of New York.

Genius Group Limited ("Genius"), a penny stock issuer, filed the *Genius* Action on behalf of a putative class of its own investors.  On January 16, 2026—the statutory deadline for any Genius investor to move for appointment as lead plaintiff—Genius moved to appoint itself lead plaintiff and to have the same three law firms representing Plaintiff here appointed as lead counsel. No other putative class member, including Aron Reynolds, filed a competing motion.  Defendants opposed Genius's motion on the grounds that Genius is both an inadequate and atypical lead

1

plaintiff, and because Genius's appointment of three law firms as co-lead counsel—including a firm that has been found to present "baseless" and "simply ridiculous" allegations in another market manipulation case—would lead to inefficiencies and excessive fees.  The court then requested supplemental briefing concerning whether the lead plaintiff appointment process should be reopened if the Court were to deny Genius's motion.  Defendants explained that no other lead plaintiff candidate emerged during the statutory application period, and reopening would allow Plaintiff's counsel to recruit a preferred substitute plaintiff in direct contravention of the primary objective under the Private Securities Litigation Reform Act ("PSLRA") of discouraging lawyer-driven litigation.

On June 18, 2026, Judge Caproni denied Genius's lead plaintiff application and refused to appoint Plaintiff's counsel as lead counsel.  The Court found that Genius failed to satisfy both the adequacy and typicality requirements for serving as lead plaintiff, noting concerns regarding Genius's lack of reliance on the market price for its common stock and the high likelihood that Genius's claims were barred by the statute of limitations.  Judge Caproni also rejected Plaintiff's counsel's request to reopen the lead plaintiff application process and Genius's offer to withdraw its pending application given the "dangerous precedent" it would set for similar future putative class actions.  Because "[a]ll putative Class members were given statutorily compliant notice of the opportunity to move for appointment as Lead Plaintiff," it was clear no additional plaintiffs "would come out of the woodwork now *on their own volition*."  The Court could not "justify needlessly providing Genius's three law firms with multiple bites at th[e] apple," and found that "[i]t seems self-evident that a lawsuit filed by two law firms, with a Motion to appoint three law firms as Lead Counsel and no appropriate Lead Plaintiff, smacks of the sort of lawyer-driven litigation that the PSLRA aims to avoid."  Judge Caproni ordered that the case proceed on an

2

individual basis, that the "class language" be removed from the case caption, and that an amended complaint be filed by July 1, 2026. Judge Caproni's June 18 decision is attached to this motion as Exhibit 1.

Rather than adhere to the Court's order, on June 29, 2026, Plaintiff's counsel purported to voluntarily dismiss the *Genius* Action without prejudice and commenced this lawsuit the same day. The *Reynolds* complaint is substantially identical to the first-filed *Genius* Action and styled once again as a class action, only substituting a new putative lead plaintiff. In other words, instead of proceeding in accordance with Judge Caproni's order, Plaintiff's counsel has sought to avail itself of this Court's jurisdiction to proceed in the exact manner that Judge Caproni held Plaintiff's counsel could **not** proceed in the *Genius* Action. After Defendants alerted Judge Caproni to Plaintiff's counsel's apparent attempt to circumvent her order, Judge Caproni directed that the *Genius* Action remain open until further notice.

Defendants are eager to reach the merits of this frivolous case without delay and further inefficiencies, but this case must proceed consistent with Judge Caproni's order. While Defendants would be pleased to litigate before Your Honor, we respectfully submit that judicial efficiency and principles of orderly adjudication require this case to be transferred back to Judge Caproni in the Southern District of New York under the well-established first-to-file rule. Transfer is also warranted for the convenience of the parties and in the interest of justice under 28 U.S.C. § 1404(a). Judge Caproni is already familiar with the facts of the case and, in reaching her prior ruling, has already considered issues that will be relevant to an eventual motion to dismiss. Moreover, allowing this case to proceed as a putative class action when that route has already been rejected would reward Plaintiff's counsel's abuse of process and forum shopping.

## BACKGROUND

### A.      Genius

Genius is a Singapore-based holding company that went public in April 2022 and is listed on the New York Stock Exchange ("NYSE").  Since its IPO, Genius has operated at a net loss every year and its share price has decreased 99%.  *See* ECF 1, *Reynolds* Compl. ¶ 76; Ex. 2, *Genius* Compl. ¶ 76.  Its shares currently trade at approximately $0.17 on NYSE.  *See* Ex. 3 (Stock Price Chart).  Genius has claimed to be the victim of manipulative trading since shortly after going public and made numerous disclosures to investors during the relevant time period regarding the "proof" and "evidence" it claimed to have uncovered of alleged manipulation.  *See* Ex. 4 (Table of Manipulation-Related Disclosures).  As part of its purported path to profitability, Genius openly markets its damages claims in pending litigation and has approved plans to pay shareholder dividends from future "legal wins."  *See* Ex. 5 (6/26/2025 Press Release).

### B.      Defendants

Defendants Citadel Securities and Virtu are SEC-registered broker-dealers operating as market makers in U.S. equities and other securities, trading for both their customers and their own accounts.  Citadel Securities is headquartered in Miami, FL; Virtu is headquartered in New York, NY.  *See Reynolds* Compl. ¶¶ 9-10.  Both Defendants maintain offices in New York, where a substantial portion of their trading decisions take place, including those related to the allegations in this case.  *See Genius* Compl. ¶ 13 (alleging that venue is proper in the Southern District of New York, including because "Defendants engaged in continuous activity in New York by effecting orders and executing trades of Genius shares on stock exchanges in New York").

### C.      Reynolds

Plaintiff Reynolds is a Florida resident who purportedly purchased and sold Genius securities during the putative class period.  *Reynolds* Compl. ¶ 8.  According to the Complaint,

4

Reynolds purchased or sold Genius securities between August 2023 and May 2025.  Reynolds's certification, attached as Exhibit 1 to the Complaint, appears to recycle the certification submitted by Genius in the *Genius* Action.  *Compare* Ex. 6 (Reynolds PSLRA Certification) ("*I* will not accept any payment for serving as a representative party on behalf of the proposed class beyond *its pro rata* share of any recovery . . . ."), *with* Ex. 7 (Genius PSLRA Certification) ("*Genius* will not accept any payment for serving as a representative party on behalf of the proposed class beyond *its pro rata* share of any recovery . . . .") (emphasis added).  Reynolds was a member of the putative class in the *Genius* Action but did not seek appointment as lead plaintiff.

### D.  Plaintiff's Counsel Commences the *Genius* Action and Genius Moves for Lead Plaintiff Appointment

On November 14, 2025, Genius filed a putative class action in the Southern District of New York.  *See* Ex. 2.  The *Genius* complaint asserts market manipulation claims under Section 9 and Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder against Citadel Securities and Virtu.  The complaint alleges that Defendants engaged in "spoofing" activities by placing massive "baiting orders" almost every day during the three-year class period, which artificially depressed Genius's shares listed on NYSE. *Id.* ¶¶ 28-56.  The *Genius* complaint asserts these claims on behalf of itself and other similarly situated persons who sold or otherwise disposed of Genius shares between April 12, 2022 and May 30, 2025 ("Class Period"). *Id.* ¶ 82.

### E.  Judge Caproni Denies Genius's Lead Plaintiff Application and Rejects Plaintiff's Counsel's Attempt to Restart the PSLRA Application Process

The market manipulation claims in the *Genius* Action were governed by the PSLRA, which requires a plaintiff to publish notice advising class members of the pendency of the action and the opportunity to move for lead plaintiff appointment within 60 days of the notice.  15 U.S.C. § 78u-4(a)(3)(A).  Plaintiff's counsel initiated the PSLRA lead plaintiff appointment process on November 17, 2025 by publishing a notice in *Business Wire* instructing investors who wished to

5

serve as lead plaintiff to move by January 16, 2026. *See* Ex. 8 (11/17/2025 Press Release). On January 16, 2026, Genius filed a Motion for Appointment as Lead Plaintiff and sought approval of Grant & Eisenhofer P.A., Kasowitz LLP, and Christian Attar as class counsel. *See* Ex. 9. No other investor, including Reynolds, sought lead plaintiff status. Defendants opposed Genius's motion on January 20, 2026, explaining that Genius would be both an atypical and inadequate lead plaintiff. Ex. 10 at 10-25. Defendants also opposed Genius's attempt to have three separate law firms appointed as class counsel, including one—Christian Attar—that had previously been sanctioned for presenting "baseless" allegations in a separate market manipulation lawsuit. *Id.* at 25-27. Genius responded on January 27, 2026. Ex. 11.

On May 15, 2026, Judge Caproni ordered the parties to meet and confer "regarding next steps in the event that the Court denies Genius's application to serve as Lead Plaintiff." Ex. 12 at 1. Specifically, the parties were ordered to discuss whether the case should proceed as a single plaintiff case or if the Court should reopen the lead plaintiff process to allow additional parties to seek lead plaintiff status. *Id.* at 1-2. The parties did not reach agreement and instead submitted supplemental briefing to the Court on June 1, 2026. Ex. 13 (Defendants' Letter), Ex. 14 (Genius's Letter). Plaintiff's counsel asked the Court to grant Genius leave to withdraw its lead plaintiff application and reopen the application process for 30 days. Ex. 14 at 1. Defendants opposed reopening the lead plaintiff process because doing so would allow Plaintiff's counsel to recruit a preferred substitute plaintiff in direct contravention of the PSLRA's principal objective of ensuring that securities class actions are driven by investors with genuine financial stakes, rather than by counsel. Ex. 13 at 1. Defendants asked that the Court order Genius to file an amended complaint within 7 days of resolution of Genius's lead plaintiff motion, and that motion to dismiss briefing be completed on a 30-30-15-day schedule thereafter. *Id.* at 3.

6

On June 18, 2026, Judge Caproni issued an order denying Genius's motion for appointment as lead plaintiff and Plaintiff's counsel's application to serve as lead counsel, declining to reopen the lead plaintiff application process, directing that the Clerk of Court "remove the class language from the case caption" and that Genius proceed as an individual plaintiff, and ordering that any amended complaint be filed by July 1, 2026 with motion to dismiss briefing to be completed on a 30-30-15 schedule by September 15, 2026. *See* Ex. 1 at 14.  The Court first held that Genius failed to satisfy both the typicality and adequacy requirements for lead plaintiff appointment. *Id.* at 6-9. The Court proceeded to deny Genius's request to appoint Plaintiff's counsel as lead counsel and questioned Genius's proposal to have three separate law firms appointed to represent the putative class. *See id.* at 9-10 ("Genius has not demonstrated that this lawsuit is so complex that it requires more than one competent firm to litigate it. . . .  Too many cooks in the kitchen present a foreseeable risk.").  The Court instead ordered that the case proceed as an individual plaintiff case. *Id.* at 14; *see also id.* at 10 ("Genius can—and has indicated that its three law firms will—pursue this lawsuit.  Genius is simply not an appropriate Lead Plaintiff for a Class.").

In rejecting Plaintiff's counsel's request to reopen the lead plaintiff application process, the Court noted the lack of evidence that "initial efforts to identify a Lead Plaintiff were insignificant or, more importantly, insufficient." *Id.* at 12.  The Court further noted that "[t]he scope of the case and claims have not changed" since Plaintiff's counsel provided the original notice under the PSLRA, and therefore the Court had no reason to expect "a crop of potential plaintiffs . . . would come out of the woodwork now on their own volition." *Id.* at 12-13.  In addressing Genius's request to voluntarily withdraw its lead plaintiff application to reopen the general application process, Judge Caproni warned that it "would set a dangerous precedent" to permit counsel to put forward a favored candidate, lose, and then simply try again:

> [I]t would set a dangerous precedent to do what Genius suggests.  What would stop every law firm from putting forth only its favored candidate — and doing its best to encourage an uncontested process — and, if that candidate is denied Lead Plaintiff status, starting the process fresh with its second favorite candidate?  The Court cannot justify needlessly providing Genius's three law firms with multiple bites at this apple.

*Id.* at 13-14.  Because the *Genius* Action "smacks of the sort of lawyer-driven litigation that the PSLRA aims to avoid," the Court concluded that it could proceed as an individual action, but not as a class action.  *Id.*  Finally, Judge Caproni ordered that Genius file an amended complaint no later than July 1, 2026, and that motion to dismiss briefing be completed by September 15, 2026.  *Id.* at 14.

> **F.     Plaintiff's Counsel Voluntarily Dismisses the *Genius* Action and Instantly Files Suit in this Court**

On June 29, 2026, two days before the deadline to submit an amended complaint in the *Genius* Action, Plaintiff's counsel moved to voluntarily dismiss the *Genius* Action without prejudice.  *See* Ex. 15.  The same day, Plaintiff's counsel filed the instant action.  The *Reynolds* Complaint is nearly identical to the complaint in the *Genius* Action but substitutes Aron Reynolds, a Florida resident, for Genius as the named plaintiff.  *See* Ex. 16 (Redline comparison of *Genius* and *Reynolds* complaints).  Indeed, paragraphs 4, 7, 14-15, 17-18, 20-25, 27, 28-37, 39-63, 65-67, 69, 71-74, 77-78, 80-81, 83-89, 92-94, 98-100, 104-105, and the Prayer for Relief are identical between the two complaints.  Both complaints are styled as class actions, assert the same market manipulation claims under Sections 9 and 10(b) of the Exchange Act and Rule 10b-5, point to the same alleged instances of manipulative trading, and seek the same relief against the same Defendants.  Both complaints are premised on *identical* exhibits that purport to identify the same 1,395,712 "spoofing events" during the Class Period.  *Compare* Ex. 17 (*Genius* Table of Alleged Spoofing Events), *with* Ex. 18 (*Reynolds* Table of Alleged Spoofing Events).  And while the *Reynolds* complaint expands the putative class from the *Genius* Action to include purchasers in

8

addition to sellers of Genius common stock, both complaints allege the exact same Class Period—

April 12, 2022 through May 30, 2025. *Compare Genius* Compl. ¶ 82, *with Reynolds* Compl. ¶ 82.

Plaintiff's counsel issued a press release on June 29, 2026 purportedly to re-start the

PSLRA lead plaintiff application process. *See* Ex. 19 (6/29/2026 Press Release). The press release

is virtually identical to the press release issued in connection with the filing of the *Genius* Action,

which Judge Caproni previously held was "sufficient" and "statutorily compliant." *Compare id.*,

*with* Ex. 8; Ex. 1 at 12. On June 30, 2026, Genius issued a press release notifying its investors of

the *Reynolds* Action and stating that Genius "has notified the law firms leading the Florida class

action [*i.e.*, Genius's own attorneys] that it intends to join the class action as a plaintiff class

member." *See* Ex. 20 (6/30/2026 Press Release).

Defendants alerted Judge Caproni to Plaintiff's counsel's refiling before this Court on June

29, 2026. *See* Ex. 21. Defendants expressed concern that Plaintiff's counsel, by seeking to dismiss

the *Genius* Action and filing the *Reynolds* complaint, appeared to have done precisely what Judge

Caproni had warned against in her June 18, 2026 order. *Id.* In response, Judge Caproni ordered

that the *Genius* Action remain open until further notice. *See* Ex. 22. Plaintiff's counsel

subsequently submitted a letter on June 29, 2026, downplaying the overlap between the *Genius*

and *Reynolds* actions, mischaracterizing Judge Caproni's order as a "narrow procedural ruling,"

and claiming—contrary to fact—that the voluntary dismissal was "self-executing." *See* Ex. 23.

## ARGUMENT

### I.   THIS ACTION SHOULD BE TRANSFERRED TO JUDGE CAPRONI IN THE SOUTHERN DISTRICT OF NEW YORK

#### A.   All Factors Under the "First-to-File" Rule Weigh in Favor of Transfer

Under the "well established" first-to-file rule, "when parties have instituted competing or

parallel litigation in separate courts, the court initially seized of the controversy should hear the

9

case." *IoT Innovations LLC v. Lutron Elecs. Co.*, 2026 WL 860531, at *2 (S.D. Fla. Mar. 30, 2026) (quoting *Collegiate Licensing Co. v. Am. Cas. Co. of Reading, Pa.*, 713 F.3d 71, 78 (11th Cir. 2013)). In determining whether the rule applies, courts consider: "(1) the chronology of the two actions; (2) the similarity of the parties; and (3) the similarity of the issues." *Id.* (citation and quotations omitted). Once the first-to-file rule applies, "[c]ourts should transfer to the first-filed district" unless Plaintiff can show "compelling circumstances." *Elliott v. Williams*, 549 F. Supp. 3d 1333, 1339 (S.D. Fla. 2021) (Altman, J.). All three conditions are satisfied here, and no compelling circumstances weigh against transfer of this follow-on lawsuit to the Southern District of New York.

### 1. The *Genius* Action Was Filed More Than Seven Months Before This Action

The chronology of the two actions weighs in favor of transfer. The *Genius* Action was filed on November 14, 2025, more than seven months prior to the filing of this action. Courts routinely apply the first-filed rule in cases with shorter intervals between the first- and second-filed suits. *See*, *e.g.*, *Kelly v. Gerber Prods. Co.*, 2021 WL 2410158, at *2 (S.D. Fla. June 11, 2021) (1.5 months between first- and second-filed lawsuits); *Women's Choice Pharms., LLC v. Rook Pharms., Inc.*, 2016 WL 6600438, at *2 (S.D. Fla. Nov. 8, 2016) (5 months). Moreover, in the *Genius* Action, investors were given notice of the lead plaintiff process in accordance with the PSLRA's requirements, and Judge Caproni issued a detailed decision addressing Genius's lead plaintiff application. *See* Ex. 1 at 12 ("All putative Class members were given statutorily compliant notice of the opportunity to move for appointment as Lead Plaintiff."). Judge Caproni's decision reflects her familiarity with the relevant issues and topics that will also need to be addressed on motion to dismiss briefing. *See Zampa v. JUUL Labs, Inc.*, 2019 WL 1777730, at

10

*4 (S.D. Fla. Apr. 23, 2019) (ordering transfer under the first-to-file rule "when there is another court that is already familiar with the issues").

Plaintiff's counsel's attempt to voluntarily dismiss the *Genius* Action does not affect the transfer analysis.  The *Genius* Action is still pending before Judge Caproni, who ordered the Clerk of Court not to close the case immediately after she was informed about the *Reynolds* Action.  And the law is clear that "the dismissal of the first-filed action does not preclude a court from using its discretion to apply the first-filed rule."  *IoT*, 2026 WL 860531, at *3 (collecting cases).  Indeed, putative class actions are routinely transferred even where the first-filed action has been dismissed, voluntarily or otherwise.  *See*, *e.g.*, *Abreu v. Pfizer, Inc.*, 2022 WL 2355541, at *23 (S.D. Fla. June 22, 2022), *report and recommendation adopted*, 2022 WL 3370932 (S.D. Fla. Aug. 16, 2022) ("Despite the fact that both earlier-filed Southern District of New York cases have been dismissed, Defendant has still established the three elements necessary to invoke the first-filed rule's application."); *see also IoT*, 2026 WL 860531, at *3 (ordering transfer although "the [first-filed] Action was dismissed and is no longer pending").  Thus, even if the *Genius* Action were closed, the first-to-file rule would still favor transferring this case to the Southern District of New York.

### 2.      The Parties Are Substantially Similar

The *Reynolds* and *Genius* actions also involve substantially similar parties.  Both complaints name the same Defendants.  And "[a]lthough the parties in the two cases are not precisely the same, the interests of the plaintiffs in each action are inextricably linked," including because "they seek identical relief based on the same claims against the same defendants." *Vyas v. Taglich Bros., Inc.*, 2023 WL 5938355, at *3 (M.D. Fla. Sept. 12, 2023); *see also*, *e.g.*, *Reyes v. Trans Union, LLC*, 2024 WL 4751408, at *3 (S.D. Fla. Nov. 12, 2024) (Altman, J.) ("[P]recise identity of the parties is not required under the first-filed rule.") (citation omitted).

"In a class action, the classes, and not the class representatives, are compared." *Zampa*, 2019 WL 1777730, at *4 (citation omitted).  To compare the classes, courts look at whether "the class definitions are sufficiently similar." *MSP Recovery Claims Series 44, LLC v. Pfizer, Inc.*, 2022 WL 17484308, at *3 (S.D. Fla. Nov. 10, 2022).  In *Goldstein v. Beliv, LLC*, the Court found that "the parties are substantially similar enough for the first-to-file rule to apply" although the two actions purported to represent "different putative classes of plaintiffs" from mutually exclusive states.  2022 WL 16540185, at *2 (S.D. Fla. Oct. 28, 2022).  As the Court explained, "the first-to-file rule applies where some of the parties in one matter are also in the other matter, regardless of whether there are additional unmatched parties in one or both matters." *Id.* (quotation and citation omitted); *see also*, *e.g.*, *MSP*, 2022 WL 17484308, at *3 (two classes were sufficiently similar where "[one] class definition encompasses [the other] class").

Here, there is significant overlap between the putative classes in the *Genius* Action and the *Reynolds* Action.  Both actions identify the same alleged Class Period: April 12, 2022 through May 30, 2025.  And while the *Genius* class included only sellers of Genius shares and the *Reynolds* class purports to include persons who both sold and purchased Genius's shares, this broader class encompasses the same class of sellers originally pleaded in the *Genius* Action—including Aron Reynolds himself.  *Compare Genius* Compl. ¶ 82, *with Reynolds* Compl. ¶ 82.  Moreover, Genius's interests are "inextricably linked" to the class members in *Reynolds*.  *Vyas*, 2023 WL 5938355, at *3.  Indeed, Genius claimed to have the "largest financial interest" of any putative class member in the *Genius* Action, Ex. 9 at 2, and "has notified the law firms leading the Florida class action that it intends to join the class action as a plaintiff class member," Ex. 20.  Further, the plaintiffs in both actions are represented by the same three law firms and seek identical relief against the same defendants.  *See Rojas v. Am. Honda Motor Co.*, 2019 WL 6324616, at *3 (S.D.

12

Fla. Nov. 26, 2019) (applying first-to-file rule where "Plaintiff and his attorneys . . . filed this very similar action" in this district to avoid an earlier California ruling). *Compare Genius* Compl. at Prayer for Relief, *with Reynolds* Compl. at Prayer for Relief. The parties are therefore sufficiently similar between the two actions to support transfer. *See MSP*, 2022 WL 17484308, at *3.

### 3. Both Actions Involve Substantially Identical Issues

Finally, transfer is warranted given the significant overlap in issues between the two actions. Where "[t]he central facts, legal questions, and causes of action in the two cases overlap to a significant extent," courts will order transfer "such that resolution of the earlier-filed case will assist in the adjudication of the later-filed case." *Goldstein*, 2022 WL 16540185, at *3. "[T]he issues need only to substantially overlap in order to apply the first-to-file rule." *Cole v. United Healthcare Ins. Co.*, 2019 WL 13256100, at *4 (S.D. Fla. Oct. 28, 2019) (citation omitted). Here, the two complaints are nearly identical. Both complaints assert claims under Sections 9 and 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder. Both complaints also detail the exact same alleged manipulative trading and point to precisely the same 1,395,712 alleged spoofing events that purportedly occurred during the same alleged Class Period. *See* Ex. 24 (Redline comparison of *Genius* Compl. Ex. 2 and *Reynolds* Compl. Ex. 2); *compare* Ex. 17, *with* Ex. 18. And Plaintiff's notices to potential lead plaintiff applicants are nearly identical word-for-word. *Compare* Ex. 8, *with* Ex. 19. The minor differences in class membership and additional alleged injuries in the *Reynolds* complaint do not render the two cases dissimilar. *See, e.g.*, *Kelly*, 2021 WL 2410158, at *2 (citation omitted) ("Raising new claims in the second action does not defeat the first-to-file rule.").

**B.**   **No Compelling Circumstances Warrant an Exception from the First-to-File Rule**

To the extent Plaintiff objects to litigating "in the first-filed forum," Plaintiff would "carry the burden of proving 'compelling circumstances' to warrant an exception" to the first-to-file rule. *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005).

No such compelling circumstances exist here.   Courts recognize that compelling circumstances exist where "forum shopping motivated the first-filed action," *Chaban Wellness LLC v. Sundesa, LLC*, 2015 WL 4538804, at *2 (S.D. Fla. July 27, 2015) (quotation omitted), but here, it is *Plaintiff's counsel* who have engaged in blatant forum shopping to obtain the "multiple bites at th[e] apple" Judge Caproni declined to give them by rejecting their attempt to reopen the lead plaintiff process in the *Genius* Action.  *See* Ex. 1 at 13-14 (finding that Plaintiff's counsel's conduct "smacks of the sort of lawyer-driven litigation that the PSLRA aims to avoid.").   That conduct alone demonstrates why transferring this case to Judge Caproni in the Southern District of New York is justified.  *See Abreu*, 2022 WL 2355541, at *23 ("The Court must discourage such clear-cut forum shopping by counsel. . . . Selectively dismissing certain cases to avoid the application of a doctrine of law must also be discouraged.").  Indeed, "not applying the first-filed rule in this case would reward Plaintiff for the very type of forum shopping . . . the rule was meant to discourage." *Rojas*, 2019 WL 6324616, at *3.

**C.**   **Transfer Is Also Appropriate Under 28 U.S.C. § 1404(a)**

Transferring this case to the Southern District of New York is also appropriate "[f]or the convenience of parties and witnesses" and "in the interest of justice" under 28 U.S.C. § 1404(a). Under this statute, the Court first "determines whether the action might have been brought in the proposed transferee court." *Michael Kors, LLC v. Chunma USA, Inc.,* 2016 WL 11020246, at *2 (S.D.            Fla.            Feb.            23,            2016)

14

(citation omitted).  "Second, the Court engages in a balancing test, weighing various private and public factors to determine if transfer is appropriate."  *Id.*  (citation omitted).  Transfer is warranted under both prongs of this analysis.

### 1.     The Claims Against Defendants Could Have Been Brought in the Southern District of New York

As a threshold matter, there is no question that this action could have been brought in the Southern District of New York.  Indeed, it was—Plaintiff's counsel has already brought a nearly identical lawsuit in the Southern District of New York.  *See Elliott*, 549 F. Supp. 3d at 1341 (finding the Eastern District of Pennsylvania was unambiguously a place where the case "might have been brought" because "[i]ndeed, it's a place where a substantially identical action *has* already been brought") (emphasis in original).  Plaintiff's counsel therefore has no credible basis to oppose transfer to the Southern District of New York under this prong.

### 2.     Transfer Would Serve the Interest of Justice

The balancing factors under Section 1404(a) further support transfer.  When assessing whether transfer would serve the interest of justice, courts consider: "(1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances."  *Manuel*, 430 F.3d at 1135 n.1.  All factors need not weigh in Defendants' favor for a transfer motion to be granted.  *See*, *e.g.*, *Camacho v. United States*, 2019 WL 6130441, at *3-5 (S.D. Fla. Nov. 19, 2019) (Altman, J.) (ordering transfer where 5 of 9 factors favored defendant).

The first four factors all favor transfer given that much of the relevant alleged conduct took place in New York. Both Defendants maintain a significant presence in New York, where Virtu is also headquartered. The effects of the alleged spoofing occurred on the New York Stock Exchange, and the likely witnesses concerning Defendants' trading in Genius are principally concentrated in New York, not Florida. *See Rojas*, 2019 WL 6324616, at *4 (granting transfer where "the majority of witnesses are likely to be associated with Defendants, who are located in California" and the "nature of the claims indicates that the locus of the operative facts is where Defendants are"). The Southern District of New York therefore has "a greater stake in the outcome of this litigation." *Culp v. Gainsco, Inc.*, 2004 U.S. Dist. LEXIS 22390, at *20-21 (S.D. Fla. Sept. 22, 2004). Because "the operative facts underlying the cause of action did not occur within the forum chosen by the plaintiff," the case should be transferred to the Southern District of New York. *Camacho*, 2019 WL 6130441, at *5 (citation omitted). And Judge Caproni has already demonstrated her familiarity with key issues in the case that will likely impact the outcome on a motion to dismiss. *See* Ex. 1 at 6-9 (analyzing statute of limitations and reliance issues). Finally, the "interests of justice" favor transfer to discourage Plaintiff's counsel's blatant forum shopping and attempt to circumvent Judge Caproni's order.

Additionally, none of the relevant factors weigh against transfer. Although Plaintiff filed in this district, a plaintiff's choice of forum "is given less than normal deference" in putative class actions, and *even less deference* "if there is any indication that plaintiff's choice of forum is the result of forum shopping." *Abreu*, 2022 WL 2355541, at *12 (quotation and citation omitted). The "availability of process to compel the attendance of unwilling witnesses" is irrelevant because Plaintiff has not identified any unwilling non-party witness who could be compelled to testify in one forum but not the other. *See Sorensen v. Am. Airlines, Inc.*, 2022 WL 2065063, at *6 (S.D.

16

Fla. June 8, 2022); *Abreu*, 2022 WL 2355541, at \*19-20.  The "relative means of the parties" is also "irrelevant" in cases like this where "counsel are financing the case on behalf of Plaintiffs." *Maxon v. Sentry Life Ins. Co.*, 2018 WL 3850011, at \*4 (M.D. Fla. Apr. 11, 2018) (citation omitted).  Finally, the fact that no lead plaintiff has been appointed in this action presents no obstacle to transferring the case.  "It is sensible to allow the court that will be presiding over th[e] matter to reach its own conclusion regarding which plaintiff and counsel are best positioned to represent the interests of the putative class."  *City of Birmingham Firemen's & Policemen's Supplemental Pension Sys. v. Pluralsight, Inc.*, 2019 WL 12496341, at \*2 (S.D.N.Y. Oct. 24, 2019); *see also In re Target Corp. S'holder Class Action Litig.*, 2025 WL 3187126, at \*3-4 (M.D. Fla. Nov. 14, 2025) (granting motion to transfer prior to lead plaintiff appointment).  Should this Court grant Defendants' motion, the decision as to lead plaintiff appointment should be left to Judge Caproni.  *See Garity v. Tetraphase Pharms. Inc.*, 2019 WL 2314691, at \*5 (S.D.N.Y. May 30, 2019) ("Because the Court grants Defendants' transfer motion, it will leave determination as to the appointment of the lead plaintiff and lead counsel to the [transferee forum].")

## CONCLUSION

For the foregoing reasons, this action should be transferred to Judge Caproni in the Southern District of New York.

## REQUEST FOR HEARING

Pursuant to Local Rule 7.1(b)(2), Defendants Citadel Securities and Virtu respectfully request that the Court schedule a hearing on the instant motion, which is estimated to require approximately one hour, to assist the Court in reviewing the procedural history of this matter and to assess whether this action should be transferred to Judge Caproni in the Southern District of New York.

17

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(a)(3)

Undersigned counsel for Defendants Citadel Securities and Virtu certify that they have made reasonable efforts to confer with counsel for Plaintiff regarding the relief sought in this Motion. Specifically, on July 15, 2026, undersigned counsel for Citadel Securities and Virtu emailed counsel for Plaintiff regarding transferring the action to Judge Caproni in the Southern District of New York. Counsel for Plaintiff asked for additional information regarding the nature of the motion and ultimately responded that they were unavailable for a meet and confer prior to Monday, July 20, 2026. Counsel for the parties subsequently met and conferred live on July 20, 2026. During the meet and confer, counsel for Defendants outlined further the basis for the motion, and counsel for Plaintiff indicated they would oppose it.

Dated: July 20, 2026

MARCUS RASHBAUM PINIERO & MEYERS LLP

*/s/ Daniel Rashbaum*
Daniel Rashbaum
Florida Bar No. 75084
One Biscayne Tower
2 South Biscayne Boulevard, Suite 2530
Miami, FL 33131
Tel: (305) 400-4260
drashbaum@mrpfirm.com

*Attorney for Citadel Securities LLC and*
*Virtu Americas LLC*

SIMPSON THACHER & BARTLETT LLP

Jonathan K. Youngwood (*pro hac vice* forthcoming)
Meredith Karp (*pro hac vice* forthcoming)
Jacob Lundqvist (*pro hac vice* forthcoming)
425 Lexington Avenue
New York, NY 10017
Tel: (212) 455-2000
jyoungwood@stblaw.com
meredith.karp@stblaw.com
jacob.lundqvist@stblaw.com

*Attorneys for Citadel Securities LLC*

PAUL, WEISS, RIFKIND, WHARTON &
    GARRISON LLP

Audra J. Soloway (*pro hac vice* forthcoming)
Alison R. Benedon (*pro hac vice* forthcoming)
Daniel S. Sinnreich (*pro hac vice* forthcoming)
Daniel Negless (*pro hac vice* forthcoming)
1285 Avenue of the Americas
New York, NY 10019
Tel: (212) 373-3000
asoloway@paulweiss.com
abenedon@paulweiss.com
dsinnreich@paulweiss.com
dnegless@paulweiss.com

*Attorneys for Virtu Americas LLC*

19