**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| ARON REYNOLDS, individual and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>   v.<br><br>CITADEL SECURITIES LLC and VIRTU AMERICAS LLC,<br><br>      Defendants. | Case No. 1:26-cv-24485-RKA<br><br><br>CLASS ACTION |

**PLAINTIFF ARON REYNOLDS' MOTION FOR AN EXTENSION OF TIME TO RESPOND TO DEFENDANTS' MOTION TO TRANSFER [ECF NO. 9]**

**TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES ........................................................................................................... ii

I.     PRELIMINARY STATEMENT ....................................................................................... 1

II.    BACKGROUND ............................................................................................................... 3

III.   ARGUMENT...................................................................................................................... 4

      A.     Good Cause Exists Because Defendants' Motion Should Be Addressed
After the PSLRA Lead Plaintiff Process ................................................................. 4

      B.     Defendants' Motion Rests on Disputed Factual and Legal Premises ..................... 6

           1.     Defendants' First-Filed Rule Rests on a Legally Flawed Premise ............. 7

           2.     Defendants Mischaracterize the Significance of the SDNY
Proceedings and Judge Caproni's Order....................................................... 8

           3.     Defendants' Motion Presents Additional Substantial Disputed
Issues.......................................................................................................... 10

IV.    CONCLUSION................................................................................................................. 13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abreu v. Pfizer, Inc.*,
2022 WL 2355541 (S.D. Fla. June 22, 2022) ...............................................................................9

*Absolute Activist Value Master Fund Ltd. v. Devine*,
998 F.3d 1258 (11th Cir. 2021) ....................................................................................................8

*Bollinger Innovations, Inc. v. Clear Street Markets LLC et al.*,
No. 1:23-cv-10637 (S.D.N.Y. Mar. 28, 2025).........................................................................12

*Brustein v. Lampert*,
2005 WL 8154797 (S.D. Fla. June 16, 2005) .............................................................................5

*Collegiate Licensing Co. v. American Cas. Co. of Reading, Pa.*,
713 F.3d 71 (11th Cir. 2013) .......................................................................................................7

*IoT Innovations LLC v. Lutron Elecs. Co.*,
2026 WL 860531 (S.D. Fla. Mar. 30, 2026)..............................................................................9

*In re January 2021 Short Squeeze Trading Litig.*,
2023 WL 6534502 (S.D. Fla. Sept. 7, 2023) .........................................................................2, 5

*Manuel v. Convergys Corp.*,
430 F.3d 1132 (11th Cir. 2005) ...............................................................................................7, 9

*Northwest Biotherapeutics, Inc. v. Canaccord Genuity LLC*,
No. 1:22-cv-10185 (S.D.N.Y. Mar. 26, 2025).........................................................................12

*Quantum Biopharma Ltd. v. CIBC World Markets, Inc. et al.*,
No. 1:24-cv-07972 (S.D.N.Y. Mar. 30, 2026).........................................................................12

*Warner v. Tinder, Inc.*,
675 F. App'x 945 (11th Cir. 2017) ..............................................................................................7

**Statutes and Other Authorities**

15 U.S.C. § 78u-4(a)(3)(B)................................................................................................................5

Federal Rule of Civil Procedure 6(b)(1)(A)......................................................................................4

Plaintiff Aron Reynolds ("Plaintiff") respectfully submits this memorandum of law in support of his motion, pursuant to Federal Rule of Civil Procedure 6(b)(1)(A), for an extension of time to respond to the motion to transfer filed by Defendants Citadel Securities LLC ("Citadel") and Virtu Americas LLC ("Virtu" and together with Citadel, the "Defendants") (ECF No. 9) (the "Motion" or "Motion to Transfer").  Plaintiff respectfully requests that the Court extend Plaintiff's deadline to respond until fourteen (14) days after the Court appoints a lead plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(3).

Good cause exists because the PSLRA contemplates that the court-appointed lead plaintiff will direct the litigation on behalf of the putative class, including decisions concerning significant litigation matters such as responding to Defendants' Motion to Transfer.  Moreover, as discussed herein, Defendants' Motion raises substantial disputed legal and factual issues that should be addressed through full adversarial briefing by the court-appointed lead plaintiff.  The requested extension is modest, is sought before Plaintiff's response deadline expires, and will not prejudice Defendants.

## I.   PRELIMINARY STATEMENT

Defendants ask this Court to transfer this Action to the Southern District of New York based principally on a pre-merits administrative order concerning lead plaintiff selection entered in a previously filed securities class action that was voluntarily dismissed before this case was ever filed.  Defendants' Motion is rife with mischaracterizations.  Their Motion mischaracterizes Judge Caproni's order, which did not—and could not—bar absent class members from exercising their independent right to file a class action under the PSLRA.  Their Motion mischaracterizes the procedural posture of the voluntarily dismissed case, in which no merits decisions had been issued, no discovery occurred, and, indeed, no substantive motions had even been filed.  The Motion mischaracterizes the Complaint filed here, which, particularly relevant at this stage, materially

expands the pleaded class to include purchasers as well as sellers and changes both the damages and standing analyses.  And their Motion mischaracterizes Eleventh Circuit law, which forecloses both of their arguments for transfer.  At bottom, Defendants are seeking to transform Judge Caproni's narrow procedural ruling about how the case ***then pending before her*** should proceed into a global injunction that somehow binds absent class members never before her court, strips them of their rights under the PSLRA, and forever shields the Defendant market-makers from facing class action liability for their misconduct—misconduct that is the subject of numerous regulatory enforcement actions and sustained market manipulation cases—in ***any*** forum, brought by ***any*** party, on behalf of ***any*** class.  Defendants' Motion is meritless.

But the question before the Court now is much narrower: not whether Defendants' Motion should ultimately be granted, but who should respond to it.  Plaintiff respectfully submits that, under the PSLRA, it is the prerogative of the lead plaintiff ultimately appointed by this Court to determine how best to respond to Defendants' Motion.  The PSLRA vests the Court-appointed lead plaintiff with ***sole*** authority to direct putative class action litigation.  *See In re January 2021 Short Squeeze Trading Litig.*, 2023 WL 6534502, at \*5 (S.D. Fla. Sept. 7, 2023) ("a lead plaintiff is empowered to control the management of the litigation as a whole") (internal citations omitted). There can be little doubt that Defendants' Motion to Transfer implicates issues that will significantly shape the future course of this litigation.  As such, the right to decide how best to respond to that motion should be in the hands of the Court-appointed lead plaintiff.  Accordingly, Plaintiff respectfully requests that the deadline to respond to Defendants' Motion (either by consenting or opposing) be deferred until ***after*** the Court appoints a lead plaintiff.[1]

---

[1] Alternatively, Plaintiff submits that the deadline should be extended until after the August 28, 2026 lead plaintiff motion deadline so that, at a minimum, the competing lead plaintiff movants may confer and coordinate any response.

While Plaintiff is eager to respond to Defendants' Motion, which it vigorously disputes on both legal and factual grounds, it is not the appropriate party to do—at least not until the Court issues a lead plaintiff order saying so.  Plaintiff's request for a modest extension of the deadline to respond will ensure that Defendants' Motion is addressed by the party ultimately responsible for making significant litigation decisions on behalf of the proposed class.

Accordingly, good cause exists under Rule 6(b)(1)(A) to grant the requested relief.

## II.   BACKGROUND

On June 29, 2026, Plaintiff commenced this securities class action against Defendants, asserting claims under the Securities Exchange Act of 1934 (the "Exchange Act") on behalf of a putative class of investors in Genius Group Limited ("Genius").  *See* ECF No. 1 (the "Complaint" or "Compl.").  That same day, consistent with the PSLRA, Plaintiff published notice of the pendency of this Action, advising members of the proposed class that any motion seeking appointment as lead plaintiff must be filed no later than August 28, 2026.  The deadline for lead plaintiff motions has not yet passed, and the Court has not appointed a lead plaintiff.

On July 20, 2026, Defendants filed a Motion to Transfer this Action to the United States District Court for the Southern District of New York.  *See* ECF No. 9.  Defendants contend that transfer is warranted principally under the first-filed rule based on the filing and procedural history of *Genius Group Limited v. Citadel Securities LLC et al.*, No. 1:25-cv-09546 (S.D.N.Y.) (the "SDNY Action"), notwithstanding that the plaintiff in that action, Genius, voluntarily dismissed it pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i) prior to filing this case.  *See* SDNY Action, ECF No. 41.  Defendants further contend that transfer is warranted under 28 U.S.C. § 1404(a) based on the convenience of the parties and the interests of justice, even though the Complaint alleges that venue is proper in this District because Citadel is headquartered in this District and Virtu maintains an office and conducts substantial business here.  *See* Compl. ¶ 12.

3

Under the Local Rules of the United States District Court for the Southern District of Florida, Plaintiff's response to Defendants' Motion to Transfer is currently due before the August 28, 2026 deadline for lead plaintiff motions under the PSLRA. During the parties' Local Rule 7.1(a)(3) meet and confer, Plaintiff requested that Defendants consent to a brief extension of the response deadline until after the August 28, 2026 lead plaintiff motion deadline. Defendants declined to consent, necessitating this motion.

## III.   ARGUMENT

Federal Rule of Civil Procedure 6(b)(1)(A) provides that, "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time" if the request is made before the original deadline expires. Fed. R. Civ. P. 6(b)(1)(A). Because Plaintiff seeks this extension before its response deadline expires, the Court may grant the requested relief upon a showing of good cause. That standard is readily satisfied here. Plaintiff seeks only a modest extension, the Court has not yet appointed a lead plaintiff under the PSLRA, and Plaintiff's response to Defendants' Motion to Transfer is currently due before the August 28, 2026 deadline for lead plaintiff motions. Under these circumstances, good cause exists to extend Plaintiff's response deadline until after the Court appoints a lead plaintiff or, alternatively, until after the deadline for lead plaintiff motions.

### A.   Good Cause Exists Because Defendants' Motion Should Be Addressed After the PSLRA Lead Plaintiff Process

Congress enacted the PSLRA to ensure that securities class actions are directed *solely* by the court-appointed lead plaintiff, who is presumptively the investor with the largest financial interest in the litigation. *See* 15 U.S.C. § 78u-4(a)(3)(B). To that end, the PSLRA requires the Court to appoint as lead plaintiff the member of the purported class "most capable of adequately representing the interests of class members" and authorizes that lead plaintiff, subject to Court

4

approval, to select and retain counsel to represent the class. *See id.* Courts have recognized that this framework was intended to place control of securities class actions in the hands of the court-appointed lead plaintiff, who is responsible for making significant litigation decisions on behalf of the putative class. *See e.g., In re January 2021 Short Squeeze Trading Litig.*, 2023 WL 6534502, at \*5 (S.D. Fla. Sept. 7, 2023) ("a lead plaintiff is empowered to control the management of the litigation as a whole") (internal citations omitted); *Brustein v. Lampert*, 2005 WL 8154797, at \*6 (S.D. Fla. June 16, 2005) (noting that the responsibilities Congress assigned to the lead plaintiff include "the responsibilities of controlling the litigation, negotiating retention agreements, and supervising the conduct of counsel.").

Consistent with that framework, Defendants' Motion to Transfer presents the types of significant litigation decisions that should be made solely by the court-appointed lead plaintiff. If granted, Defendants' Motion would substantially affect the course of this litigation, determining, among things, the forum in which this Action proceeds, governing law, discovery strategy and logistics, and litigation costs. Here, however, Plaintiff's response is due before the August 28, 2026 lead plaintiff deadline, and thus before the Court has had the opportunity to appoint the party charged by the PSLRA with determining what the appropriate response to that Motion ought to be. Under these circumstances, good cause exists to defer Plaintiff's response until after the Court appoints a lead plaintiff. At a minimum, if the Court declines to defer the response deadline until after appointment of a lead plaintiff, it should extend the deadline until after the August 28, 2026 lead plaintiff motion deadline so that the competing lead plaintiff movants may confer, determine whether a coordinated response is appropriate, and prepare any such response.

Plaintiff is eager to respond to Defendants' Motion. But the question is not whether a response should be filed, but who should determine its contents and litigation strategy. The lead

plaintiff ultimately appointed by the Court may elect to oppose the Motion on different grounds, narrow the issues presented, or take a different position altogether. Those strategic decisions should be made by the party the PSLRA contemplates will direct this litigation.

Nor will Defendants suffer any prejudice from the requested extension. The extension is modest, and deferring briefing on Defendants' Motion until after the appointment of a lead plaintiff (or, alternatively, until after the August 28, 2026 lead plaintiff motion deadline) will not materially delay this litigation. By contrast, requiring a response now would force significant strategic decisions regarding venue to be made before the Court has appointed a lead plaintiff. Granting the requested extension, however, will ensure that any opposition reflects the position of the court-appointed lead plaintiff, or, at a minimum, affords the competing lead plaintiff movants an opportunity to confer and coordinate their position before briefing is complete. Under these circumstances, the requested extension best effectuates the purposes of the PSLRA.

In the alternative, if the Court declines to defer the deadline until after the appointment of a lead plaintiff, Plaintiff requests that the response deadline instead be extended until twenty-one (21) days after the August 28, 2026 deadline for lead plaintiff motions, thereby allowing the competing lead plaintiff movants to confer, determine whether a coordinated response is appropriate, and prepare any such response.

**B.      Defendants' Motion Rests on Disputed Factual and Legal Premises**

Defendants' Motion to Transfer presents substantial factual and legal issues concerning the future course of this Action. Plaintiff does not seek to fully address those issues in the context of this request, but simply to illustrate that both Defendants' Motion and the potential responses thereto present substantial issues and, as such, the class's response should be determined by the Court-appointed lead plaintiff.

6

### 1.     Defendants' First-Filed Rule Rests on a Legally Flawed Premise

Defendants' Motion is premised principally on the contention that this Action should be transferred under the first-filed rule.  That contention, however, rests on a legally flawed premise and presents threshold legal questions that warrant full briefing after the lead plaintiff process is complete.

Most fundamentally, Defendants' first-filed argument largely ignores that, under Eleventh Circuit law, the "first-filed rule" applies only where the cases at issues were, at least at some point, pending simultaneously.  *See, e.g.*, *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005) (first-filed rule applies "[w]here ***two actions*** involving overlapping issues and parties ***are pending in two federal courts***") (emphasis added); *Collegiate Licensing Co. v. American Cas. Co. of Reading, Pa.*, 713 F.3d 71 (11th Cir. 2013) (same); *Warner v. Tinder, Inc.*, 675 F. App'x 945, 947 (11th Cir. 2017) ("[W]e are particularly skeptical of the conclusion that this action would violate the first-filed rule. At no point was this case pending in two federal courts at the same time—something that our case law appears to suggest is a requisite for application of the rule."). Unless both actions are pending at the same time, at least at some point, priority simply cannot attach to the first-filed case.

Here, Genius filed a notice of voluntary dismissal of the SDNY Action pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i) ***before*** this case was filed.  *See* SDNY Action, ECF No. 41. Genius filed that notice of voluntary dismissal before any defendant served either an answer or a motion for summary judgment.  *See id.*  Accordingly, there is no dispute that, under Rule 41(a)(1)(A)(i), Genius' notice of dismissal was self-executing the moment it was filed, immediately dismissed the case, and terminated the SDNY court's jurisdiction. *See Absolute Activist Value Master Fund Ltd. v. Devine*, 998 F.3d 1258, 1265 (11th Cir. 2021) (holding that a Rule 41(a)(1)(A)(i) dismissal "is effective immediately upon filing," that "the action is no longer

pending," and that "the district court is immediately deprived of jurisdiction over the merits of the case").

Tacitly acknowledging that Genius' voluntarily dismissal of the SDNY Action ***prior*** to Plaintiff's filing of this case sinks their "first-filed" argument, Defendants half-heartedly argue that the SDNY Action is "still pending" because Judge Caproni "ordered the Clerk of Court not to close the case" following the filing of the notice of dismissal. *See* Defs.' Mot. at 11.  But *Devine* makes clear that a Rule 41(a)(1)(A)(i) dismissal becomes effective immediately upon filing and renders the action "no longer pending." *Devine*, 998 F.3d at 1265.  Defendants identify no authority suggesting that an administrative instruction to the Clerk can alter the legal effect of a self-executing Rule 41(a)(1)(A)(i) dismissal or explaining how their position can be reconciled with Eleventh Circuit authority holding that the first-filed rule applies only where two actions are, at least at some point, simultaneously "pending in two federal courts."[2] *Manuel*, 430 F.3d at 1135.

These threshold legal and procedural issues underscore that Defendants' Motion presents substantial questions regarding the applicability of the first-filed rule that should be addressed after the lead plaintiff process has advanced.

### 2. Defendants Mischaracterize the Significance of the SDNY Proceedings and Judge Caproni's Order

Defendants' Motion also rests on a fundamentally flawed characterization of the SDNY proceedings and the scope and effect of Judge Caproni's June 18, 2026 Opinion & Order (*see*

---

[2] Defendants' cited authorities do not support their argument.  *Abreu* involved numerous simultaneously pending nationwide class actions, with four overlapping actions remaining pending after the earlier-filed SDNY actions were dismissed, and did not address the effect of a Rule 41(a)(1)(A)(i) dismissal. *See Abreu v. Pfizer, Inc.*, 2022 WL 2355541, at *8–9, *23 (S.D. Fla. June 22, 2022); *see also IoT Innovations LLC v. Lutron Elecs. Co.*, 2026 WL 860531, at *1 (S.D. Fla. Mar. 30, 2026) (involving dismissal of the first-filed action only after second case was filed and indeed, after motion for transfer in the second case was fully briefed; both cases had been pending ***simultaneously***).

SDNY Action, ECF No. 40) (the "Order").  In addition to invoking the first-filed rule, Defendants repeatedly contend that transfer is warranted because Judge Caproni is already "familiar" with the dispute and because her Order effectively precludes Plaintiff from pursuing this Action as a putative class action in another forum.  *See* Defs.' Mot. at 3, 10, 16.  Those contentions mischaracterize both the SDNY proceedings and the limited scope of the Order and should be addressed after the lead plaintiff process.

The Order addressed a narrow, plaintiff-specific inquiry under the PSLRA concerning whether Genius could adequately represent the proposed class as lead plaintiff and whether the PSLRA process could be reopened in the case then pending before Judge Caproni.  *See generally* Order.  Specifically, the court considered whether Genius could serve as lead plaintiff under the PSLRA, including whether Genius satisfied the PSLRA's adequacy and typicality requirements, whether Genius's own claims appeared subject to a statute of limitations defense, and whether the court should reopen the PSLRA lead plaintiff appointment process after no other investor sought appointment during the statutory notice period.  *See id.* at 5–13.  The court ultimately concluded that Genius could not adequately represent the proposed class and declined to reopen the lead plaintiff appointment process in the SDNY Action.  *Id*. at 14.  In doing so, however, the court did not adjudicate the merits of the claims asserted in the SDNY Action or the rights of the putative class.  Rather, its analysis was confined to whether Genius could adequately serve as lead plaintiff in the SDNY Action.

At bottom, Defendants seek to transform Judge Caproni's limited ruling into a global injunction that effectively binds absent class members and extinguishes their independent rights under the PSLRA.  The Order did no such thing.  It did not—and could not—adjudicate the rights of absent class members under the PSLRA or preclude another investor from timely commencing

a separate PSLRA securities class action. Nor did the court's ruling require Genius to continue prosecuting an individual action after determining that it could not adequately serve as lead plaintiff, particularly where participation as an absent class member in a subsequently filed securities class action would be the more efficient course.

Defendants also mischaracterize Judge Caproni's "familiarity" with the facts of this case. Before Genius voluntarily dismissed the SDNY Action, no defendant had answered or moved to dismiss the complaint, no discovery had occurred, and the court had not addressed any merits issues concerning Defendants' alleged conduct or the viability of the Exchange Act claims asserted against them. Indeed, despite Defendants' contention that "Judge Caproni has already demonstrated her familiarity with key issues in the case that will likely impact the outcome on a motion to dismiss" (*see* Defs.' Mot. at 16), Judge Caproni never considered the sufficiency of the pleadings, the viability of the Exchange Act claims, or the merits of Defendants' alleged conduct. Rather, the court's analysis was confined to issues concerning Genius's ability to serve as lead plaintiff and defenses unique to Genius. While Defendants emphasize that the SDNY Action had been pending for "seven months," they ignore that the only motion even pending (let alone decided) during those seven months was Genius' motion for lead plaintiff appointment. Accordingly, whether Judge Caproni's limited, plaintiff-specific rulings can reasonably support transfer under either the first-filed rule or 28 U.S.C. § 1404(a) presents a substantial issue that should be addressed after the lead plaintiff process has progressed so that the response reflects the litigation strategy of the party ultimately charged with directing this Action under the PSLRA.

### 3. Defendants' Motion Presents Additional Substantial Disputed Issues

Defendants' Motion also presents substantial factual and legal disputes concerning the nature of this Action, the allegations in the Complaint, and the circumstances surrounding its filing. Throughout the Motion, Defendants repeatedly describe this case as a "frivolous case," accuse

10

Plaintiff's counsel of "forum shopping," "gamesmanship," and attempting to "circumvent" Judge Caproni's Order, and insist that "the scope of the case and claims have not changed."  *See* Defs.' Mot. at 3, 14, 16.  Those assertions are vigorously disputed and cannot simply be accepted as true in resolving Defendants' Motion.  Rather, they present contested legal and factual issues that should be addressed after the lead plaintiff process so that the response reflects the litigation strategy of the party ultimately charged with directing this Action under the PSLRA.

For example, Defendants repeatedly characterize this action as a "frivolous case."  Defs.' Mot. at 3.  As alleged in the Complaint, however, the Action concerns an extensive alleged spoofing and market manipulation scheme carried out by two of the nation's largest market makers that have repeatedly been the targets of SEC and FINRA enforcement actions for precisely the manipulative conduct alleged in the Complaint.  *See* Compl. ¶¶ 24, 27.  Moreover, courts have sustained Exchange Act claims arising from substantially similar alleged spoofing conduct against these same Defendants (represented by their same counsel), as well as other market makers.  *See Northwest Biotherapeutics, Inc. v. Canaccord Genuity LLC*, No. 1:22-cv-10185, ECF No. 188 (S.D.N.Y. Mar. 26, 2025) (sustaining market manipulation claims against Defendants Citadel and Virtu); *see also Quantum Biopharma Ltd. v. CIBC World Markets, Inc. et al.*, No. 1:24-cv-07972, ECF No. 46 (S.D.N.Y. Mar. 30, 2026); *Bollinger Innovations, Inc. v. Clear Street Markets LLC et al.*, No. 1:23-cv-10637, ECF No. 70 (S.D.N.Y. Mar. 28, 2025).

Defendants also rely on Judge Caproni's observation that, at the time of her Order, "the scope of the case and claims have not changed."  Defs.' Mot. at 7 (quoting SDNY Order at 12–13).  But that observation was made in the context of the SDNY Action, before this Action expanded the proposed class to include purchasers of Genius securities in addition to sellers.  As Defendants themselves acknowledge (*see* Defs.' Mot. at 8–9, 12), this Action materially expands

11

the proposed class beyond the SDNY Action by including purchasers of Genius securities, rather than only sellers. *See* Compl. ¶ 82. Defendants nevertheless rely on Judge Caproni's observation as though the expansion of the proposed class has no bearing on the transfer analysis, notwithstanding that the premise underlying the Order has materially changed.

Finally, Defendants repeatedly accuse Plaintiff of attempting to "skirt" or "circumvent" Judge Caproni's Order through improper "forum shopping." *See* Defs.' Mot. at 1, 3, 14, 16. Those accusations are unfounded. Judge Caproni held only that the SDNY Action could not proceed as a class action because Genius was not an appropriate lead plaintiff and declined to reopen the PSLRA lead plaintiff process ***in that action***. *See* Order at 11–14. She did not hold that absent class members were precluded from pursuing their claims through a separate PSLRA action. Nor could she. Consistent with that ruling, Plaintiff did not seek to revive the SDNY Action or otherwise relitigate Judge Caproni's Order. Instead, Plaintiff timely commenced this separate Action pursuant to the PSLRA in the Southern District of Florida—a forum with a substantial connection to the alleged misconduct. *See* Compl. ¶ 12. Defendants' attempt to characterize that course of action as either forum shopping or an effort to evade Judge Caproni's Order therefore makes little sense. Plaintiff did not disregard Judge Caproni's Order; Plaintiff proceeded in a manner entirely consistent with it by commencing a separate action on behalf of a broader proposed class in a forum with an obvious nexus to the parties and the alleged misconduct.

In short, Defendants' Motion rests on numerous contested legal and factual assertions extending well beyond a routine request to transfer venue. Those issues warrant full adversarial briefing after the lead plaintiff process so that they may be addressed by the party ultimately responsible for prosecuting this Action.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court extend Plaintiff's deadline to respond to Defendants' Motion to Transfer until fourteen (14) days after the Court appoints a lead plaintiff pursuant to the PSLRA.  Alternatively, Plaintiff requests that the Court extend Plaintiff's response deadline until fourteen (14) days after the August 28, 2026 deadline for lead plaintiff motions, together with such other and further relief as the Court deems just and proper.

### CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(a)(3)

Pursuant to Local Rule 7.1(a)(3), undersigned counsel certifies that on July 20, 2026, counsel conferred with counsel for Defendants in a good-faith effort to resolve the issues raised by this Motion.  Defendants declined to consent to the requested extension.

13

DATED: July 23, 2026                    Respectfully submitted,

*/s/ Jacob Abrams*
_____

**KASOWITZ LLP**
Jacob Abrams
201 S. Biscayne Blvd., Suite 2550
Miami, FL 33131
Telephone: (305) 377-1666
Facsimile: (305) 377-1664
jabrams@kasowitz.com

**GRANT & EISENHOFER P.A.**

Abe Alexander (*pro hac vice*)
Vincent J. Pontrello (*pro hac vice*)
485 Lexington Avenue
New York, NY 10017
Telephone: (646) 722-8500
Facsimile: (610) 722-8501
aalexander@gelaw.com
vpontrello@gelaw.com

**CHRISTIAN ATTAR**

James W. Christian (*pro hac vice*
forthcoming)
1177 W. Loop South, Suite 1700
Houston, Texas 77027
Telephone: (713) 659-7617
Facsimile: (713) 659-4641
jchristian@christianattarlaw.com

*Counsel for Plaintiff Aron Reynolds*

14