**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| ARON REYNOLDS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CITADEL SECURITIES LLC and VIRTU AMERICAS LLC,<br><br>Defendants. | Case No. 1:26-cv-24485-RKA<br><br>CLASS ACTION |

**PLAINTIFF'S MOTION AND MEMORANDUM OF LAW IN SUPPORT OF APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL**

Plaintiff Aron Reynolds ("Plaintiff"), pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B), respectfully moves this Court for entry of an Order: (i) appointing Plaintiff as Lead Plaintiff in the above-captioned securities class action (the "Action"); (ii) approving Plaintiff's selection of Grant & Eisenhofer P.A. ("G&E") and Freedman Normand Friedland LLP ("FNF," together with G&E, "Lead Counsel") as Lead Counsel for the Class; and (iii) granting such other and further relief as the Court may deem just and proper.

## PRELIMINARY STATEMENT

This Action asserts claims under Sections 9 and 10(b) of the Exchange Act, 15 U.S.C. §§ 78i, 78j(b), and SEC Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, against Defendants Citadel Securities LLC ("Citadel") and Virtu Americas LLC ("Virtu," together with Citadel, the "Defendants"). ¶¶ 89–105.[1] Plaintiff asserts these claims on behalf of himself and all other persons and entities that purchased or sold securities of Genius Group Limited ("Genius" or the "Company") between April 12, 2022 and May 30, 2025, inclusive (the "Class Period"), and were damaged thereby (the "Class"). ¶ 82. The Action arises from Defendants' years-long manipulative and illegal trading of Genius securities. ¶¶ 28–56. Throughout the Class Period, Defendants repeatedly, and on a massive scale, engaged in an illegal trading practice known as "spoofing," placing manipulative orders designed to create a false impression of supply and demand and thereby artificially deflate the price of Genius stock and inflate the bid-ask spread. *Id.* Specifically, Defendants submitted and then immediately canceled thousands of orders to trade Genius common stock without any genuine intent to execute those trades. ¶ 39; Ex. 2. These

[1] References to "¶ __" are to the Class Action Complaint (ECF No. 1) ("Complaint").

"baiting" orders served no legitimate economic purpose. Instead, they were designed to mislead market participants regarding the supply of, demand for, and volatility of Genius securities, thereby artificially depressing Genius's stock price and increasing investors' transaction costs. ¶¶ 33–66. Defendants profited massively from their spoofing scheme, while Class members were damaged by transacting in Genius securities at manipulated prices and artificially inflated bid-ask spreads. *See, e.g.*, ¶¶ 42–55.

The PSLRA provides that the "most adequate plaintiff" shall serve as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). The "most adequate plaintiff" is the movant with the "largest financial interest" in the relief sought by the Class who also makes a *prima facie* showing of typicality and adequacy under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). As set forth below, Plaintiff is the "most adequate plaintiff," including because he has the "largest financial interest" of any movant. During the Class Period, Plaintiff transacted in 1,745,501 shares of Genius stock, consisting of 1,590,501 purchases and 155,000 sales, and, with respect to those sales, suffered $106,385 in first-in, first-out ("FIFO") losses and $22,596 in last-in, first-out ("LIFO") losses. *See* Ex. B (loss chart).[2] All of Plaintiff's transactions were placed and executed on the open market. *See* Exs. B, C.

In addition to asserting the largest financial interest, Plaintiff satisfies the requirements of Rule 23 because his claims are typical of those of the Class and he will fairly and adequately represent the Class's interests. Plaintiff understands and is prepared to fulfill his responsibilities as Lead Plaintiff, including overseeing counsel, participating in significant litigation decisions,

[2] Plaintiff's PSLRA-mandated Certification is attached as Exhibit 1 to the Complaint (ECF No. 1-1) and, for the Court's convenience, is attached hereto as Exhibit A. In addition, Plaintiff's FIFO and LIFO loss calculations, including charts identifying the volume and price of Plaintiff's stock transactions during the Class Period, are attached hereto as Exhibit B. Exhibits C through F are referenced herein where applicable.

and acting in the best interests of the Class as a whole. *See* Ex. C (Plaintiff's Declaration in Support of his Motion for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel ("Plaintiff's Decl.")) ¶¶ 3–4.

Plaintiff has further demonstrated his adequacy through his selection of G&E and FNF as Lead Counsel for the Class. As discussed below, G&E and FNF are nationally recognized for their skill and experience in complex securities class action litigation. *See* § III, *infra*. Accordingly, Lead Counsel are eminently qualified to prosecute the Action.

For these reasons, and as set forth more fully below, Plaintiff respectfully submits that he should be appointed Lead Plaintiff and that his selection of Lead Counsel should be approved.

## STATEMENT OF FACTS

Genius provides AI-powered business education and development tools as well as management consultancy services to entrepreneurs and business owners. ¶ 15. Genius also owns and operates resorts, retreats, and co-working cafes that offer resources supporting entrepreneurship and business development located across Europe, the Middle East, Africa, North Asia, the Asia Pacific, Australia, North America and South America. *Id.* Genius securities have been publicly traded on the NYSE since April 2022 under the ticker "GNS." ¶ 16. Defendants are Delaware limited liability companies registered with the SEC as broker-dealers. Defendants place and execute trades for their own accounts as well as for their customers. Collectively, Defendants were responsible for 65%-85% of all over-the-counter trading of Genius securities throughout the Class Period. ¶¶ 9–10.

As alleged in the Complaint, during the Class Period, Defendants placed ***at least*** 1,395,792 manipulative and deceptive "spoofing" orders to buy and sell Genius stock—totaling ***at least*** 139,579,200 shares—that artificially depressed the price of Genius stock and inflated transaction costs, enriching Defendants at the Class's expense. ¶ 39; Ex. 2. Specifically, acting either for their

own account or executing customer trades, Defendants inundated exchange Limit Order Books with a large volume of Baiting Orders and then cancelled those Baiting Orders from the Limit Order Books within milliseconds after achieving the desired directional price movement. ¶¶ 33–56. Defendants orchestrated these "spoofing episodes" nearly every trading day during the Class Period, sometimes placing ***thousands*** of Baiting Orders in the market on a given day. ¶ 39; Ex. 2.

Defendants' continuous placement and cancellation of thousands of fictitious Baiting Orders served no legitimate market function. Instead, Defendants' trading was intended to transmit false and misleading price signals designed, among other things, to "trick" or "bait" other market participants into placing their own sell orders. ¶¶ 33–66. Through this scheme, Defendants perpetrated a fraud on the market and created a "pile-on" effect that depressed the price of Genius's shares over time. *Id*. This manipulation benefitted Defendants in multiple ways, including (1) enhancing the value of their pre-existing short positions, allowing them to cover those significant positions at advantageous prices; and (2) facilitating what a Virtu senior officer called the "Three Tick Boogie," whereby Defendants absorbed and resold customer order flow at prices that were favorable to them, but unfavorable to their customers (fraudulent conduct for which the SEC fined Citadel in 2017). *See, e.g.*, ¶¶ 42–55. Meanwhile, Plaintiff and other Class members were forced to transact in Genius stock at artificially depressed prices and artificially inflated bid-ask spreads as a result of Defendants' misconduct. ¶¶ 67–79.

## ARGUMENT

The Court should appoint Plaintiff as Lead Plaintiff because he is the movant "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA governs the lead plaintiff selection process in class actions arising under the federal securities laws. Under the PSLRA, the "most adequate plaintiff" is presumed to be the movant with the "largest financial interest in the relief sought by the class" who can make a *prima facie*

showing of the typicality and adequacy requirements of Rule 23. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I). As set forth below, Plaintiff respectfully submits that he is the "most adequate plaintiff" and should be appointed Lead Plaintiff.

## I. PLAINTIFF'S MOTION IS TIMELY

Under the PSLRA, any Class member may move for appointment as Lead Plaintiff within 60 days of the publication of notice that the first action asserting substantially the same claims has been filed. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). On June 29, 2026, Plaintiff filed the Complaint initiating the Action. *See* ECF No. 1. That same day, G&E, as counsel for Plaintiff, published a notice on Business Wire alerting investors to the pendency of the Action, and informing them of the 60-day deadline to seek appointment as Lead Plaintiff, which is August 28, 2026. *See* Ex. D. As such, Plaintiff's motion for appointment as Lead Plaintiff is timely.

## II. PLAINTIFF IS THE MOST ADEQUATE PLAINTIFF

Plaintiff should be appointed Lead Plaintiff because he is the "most adequate plaintiff" to represent the Class. 15 U.S.C. § 78u-4(a)(3)(B)(i). Pursuant to the PSLRA, there is a rebuttable presumption that the "most adequate plaintiff" is the "person or group of persons" with the "largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also Miller v. Dyadic Int'l, Inc.*, 2008 WL 2465286, at *3 (S.D. Fla. Apr. 18, 2008) (quoting statute). Plaintiff has the largest financial interest of any qualified movant. In addition, Plaintiff satisfies Rule 23's typicality and adequacy requirements and is prepared to fulfill his responsibilities as Lead Plaintiff, including overseeing Lead Counsel, remaining informed regarding the Action's progress, participating in significant litigation decisions, and acting in the best interests of the Class as a whole. *See* Plaintiff's Decl. ¶¶ 3–4.

### A. Plaintiff Has the Largest Financial Interest of Any Movant

Plaintiff is the movant with the "largest financial interest in the relief sought by the class" and, accordingly, should be appointed Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii). Under the PSLRA, the size of a movant's financial stake in the litigation is by far the most significant factor in determining whether it is "most adequate." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also In re January 2021 Short Squeeze Trading Litig.*, 2021 WL 4840857, at *2 (S.D. Fla. Oct. 15, 2021) ("Given the PSLRA's framework, the person(s) or entity with the greatest financial interest generally enjoys the rebuttable presumption that he, she, or it is the most adequate plaintiff to serve as lead plaintiff.") (citation omitted). In determining a movant's financial stake, "courts in the Eleventh Circuit consider: (1) the number of shares purchased during the class period, (2) the amount of the investment or net funds expended during the class period, and (3) the estimated losses suffered." *Steppacher v. Alfi, Inc.*, 2022 WL 1115049, at *6 (S.D. Fla. Apr. 13, 2022) (citation omitted).

These factors are a particularly appropriate proxy for determining a movant's financial stake in the Action because, given the character of the alleged harm caused by Defendants' misconduct, a Class member's damages will depend significantly on the volume of their stock sales during the Class Period. Here, Plaintiff transacted in 1,745,501 shares of Genius stock during the Class Period, purchasing 1,590,501 shares and selling 155,000 shares. As a result of those sales, Plaintiff suffered approximately $106,385 in FIFO losses and $22,596 in LIFO losses. *See* Ex. B. All of Plaintiff's transactions were placed and executed on the open market. *See* Exs. B, C. To the best of Plaintiff's knowledge, there is no other movant seeking Lead Plaintiff appointment that has a larger interest in this litigation. Accordingly, Plaintiff has the largest financial interest of any qualified movant seeking Lead Plaintiff status and is presumptively the "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(iii).

### B. Plaintiff Otherwise Satisfies Rule 23's Requirements

In addition to possessing the largest financial interest in the outcome of the litigation, Plaintiff otherwise satisfies the requirements of Rule 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). On a motion to serve as Lead Plaintiff, a movant need only make a "preliminary showing" of typicality and adequacy pursuant to Rule 23. *See Luczak v. Nat'l Beverage Corp.*, 2018 WL 9847842, at *2 (S.D. Fla. Oct. 12, 2018). As detailed below, Plaintiff satisfies these requirements.

Plaintiff's claims are typical of the claims of the other purchasers and sellers of Genius securities comprising the Class. "Typicality is established where the proposed lead plaintiff has sustained the same injuries as the proposed class members resulting from the same course of conduct by the defendants." *McIlvaine v. ArthroCare Corp.*, 2008 WL 11331999, at *4 (S.D. Fla. July 16, 2008). Here, Plaintiff's claims and the claims of all other Class members arise "from the same course of conduct by the defendants" and all turn on the same disputed issues of law or fact—principally, whether Defendants engaged in the trading scheme alleged in the Complaint, whether that scheme violated the federal securities law, and whether Defendants' conduct artificially depressed the price of Genius stock and inflated transaction costs during the Class Period. Like all Class members, Plaintiff (1) transacted in the Company's stock during the Class Period; (2) in a market allegedly distorted by Defendants' spoofing scheme, including through artificially depressed stock prices and inflated bid-ask spreads; and (3) suffered damages as a result. Accordingly, Plaintiff's claims are typical of those of the Class.

Plaintiff similarly satisfies Rule 23's adequacy requirement. Under Rule 23(a)(4), the representative party must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In determining whether a movant is adequate, courts consider whether "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) the class members'

interests are not antagonistic to one another; and (3) the class has sufficient interest in the outcome of the case to ensure vigorous advocacy." *Miller*, 2008 WL 2465286, at *6 (citation and quotations omitted). Plaintiff easily satisfies these requirements. His substantial financial stake in the litigation provides ample incentive to vigorously prosecute the Action on behalf of the Class, and his interests are aligned with those of other Class members who were damaged by the same alleged manipulative trading scheme. There is no evidence of any conflict or antagonism between Plaintiff and the Class. *See* Plaintiff's Decl. ¶ 5. Plaintiff has also selected highly qualified and experienced counsel to represent the Class. *See* § III, *infra*.

Further, Plaintiff understands his obligation under the PSLRA to oversee and supervise the litigation separate and apart from counsel, including by remaining informed regarding the progress of the Action, reviewing significant filings, providing input regarding litigation strategy, and participating in important litigation decisions, including any decision regarding settlement. *See* Plaintiff's Decl. ¶¶ 3–4.

Accordingly, Plaintiff has made the requisite *prima facie* showing that he satisfies the relevant Rule 23 requirements.

## III. PLAINTIFF'S SELECTION OF LEAD COUNSEL SHOULD BE APPROVED

Pursuant to the PSLRA, a movant shall, subject to Court approval, select and retain counsel to represent the class it seeks to represent, and the court should not disturb that selection unless it is necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); *see also In re January 2021*, 2021 WL 4840857, at *6 ("The district court should generally employ a deferential standard in reviewing the lead plaintiff's choice… The Court should not interfere with the lead plaintiff's selection of counsel unless necessary to protect the interests of the class.") (citation and quotations omitted).

G&E is among the preeminent securities class action law firms in the country. G&E has served as lead or co-lead counsel in several of the largest securities class actions in history, including: *In re Tyco Int'l Ltd. Sec. Litig.*, No. 02-cv-1335 (D.N.H.) ($3.2 billion recovery); *In re Pfizer Inc. Sec. Litig.*, No. 1:04-cv-9866 (S.D.N.Y.) ($486 million recovery); *In re Global Crossing, Ltd. Sec. Litig.*, No. 02-cv-910 (S.D.N.Y.) ($448 million recovery); *In re Refco, Inc., Sec. Litig.*, No. 05-cv-8626 (S.D.N.Y.) ($367 million recovery); *In re Marsh & McLennan Cos. Sec. Litig.*, MDL No. 1744 (S.D.N.Y.) ($400 million recovery); and *In re Oxford Health Plans, Inc., Sec. Litig.*, MDL No. 1222 (S.D.N.Y.) ($300 million recovery). *See* Ex. E (G&E Firm Resumé).

FNF was appointed, and is serving, as lead counsel in *Peter D Arcy v. Sequential Brands Group, Inc. et al.*, No. 1:21-cv-07296 (S.D.N.Y.) and *In re Qutoutiao, Inc. Sec. Litig.*, No. 1:20-cv-06707 (S.D.N.Y.), and numerous other securities fraud and shareholder class actions across the country. *See* Ex. F. In addition, FNF was appointed and served, or is serving, as co-lead counsel in *Lowry v. RTI Surgical Holdings, Inc. et al.*, No. 1:20-cv-01939 (N.D. Ill.), *In re Cormedix Inc. Sec. Litig.*, No. 2:21-cv-14020 (D.N.J.), *Hartel v. Geo Grp., Inc. et. al.*, No. 9:20-cv-81063 (S.D. Fla.), and *Pasquinelli et al. v. HUMBL, LLC et al.,* (Del.). *Id*. In both *Sequential Brands* and *RTI Surgical*, FNF recovered over 30% of plaintiffs' estimated damages–more than three times the typical recovery in a securities fraud class action. And as class counsel in an antitrust class action styled *Henry et al. v. Brown University et al.*, No. 1:22-cv-00125 (N.D. Ill.), FNF has recovered $319 million to-date for putative class members and most recently, defeated defendants' motion for summary judgment in its entirety. *See* Ex. F (FNF Firm Resumé).

Thus, the Court may be assured that by granting this Motion, the Class will receive the legal representation of the highest caliber.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court appoint Plaintiff as Lead Plaintiff; approve his selection of G&E and FNF as Lead Counsel for the Class; and grant any such further relief as the Court may deem just and proper.

## COMPLIANCE WITH LOCAL RULE 7.1

This Motion is filed pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934, as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B). The PSLRA provides that, not later than 60 days after publication of the required notice, any member of the purported class may move the Court to serve as lead plaintiff, including a class member who is not individually named as a plaintiff in the complaint. 15 U.S.C. §§ 78u-4(a)(3)(A)(i)(II), (B)(i). Here, notice was published on June 29, 2026, and the deadline for class members to seek appointment as Lead Plaintiff is August 28, 2026. Consequently, counsel for Plaintiff Aron Reynolds cannot know with certainty before expiration of the statutory deadline who, if anyone, will file a competing motion for appointment as Lead Plaintiff and therefore cannot identify or confer with all persons who may seek or be affected by the relief requested herein. To the extent Local Rule 7.1(a)(3)'s pre-filing conference requirement applies to this Motion, Plaintiff respectfully requests that the Court waive that requirement. Plaintiff will confer with any competing movants following expiration of the lead-plaintiff deadline, as appropriate. Further, under the PSLRA, the statutory presumption concerning the most adequate plaintiff "may be rebutted only upon proof by a member of the purported plaintiff class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

DATED: August 28, 2026

Respectfully submitted,

*/s/ Devin (Velvel) Freedman*
**FREEDMAN NORMAND FRIEDLAND LLP**
Devin (Velvel) Freedman

1815 Purdy Avenue
Miami, FL 33139
Telephone: (786) 924-2900
vel@fnf.law

**GRANT & EISENHOFER P.A.**
Abe Alexander (*pro hac vice*)
Vincent J. Pontrello (*pro hac vice*)
485 Lexington Avenue
New York, NY 10017
Telephone: (646) 722-8500
Facsimile: (610) 722-8501
aalexander@gelaw.com
vpontrello@gelaw.com

*Counsel for Plaintiff Aron Reynolds and Proposed Lead Counsel for the Class*