**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:26-24485-Civ-ALTMAN

| | |
|---|---|
| ARON REYNOLDS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CITADEL SECURITIES LLC and VIRTU AMERICAS LLC,<br><br>Defendants. | CLASS ACTION |

**MOTION OF MOVANT JORDAN DARIO PRIMO FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL; MEMORANDUM OF LAW IN SUPPORT**

## TABLE OF CONTENTS


MOTION ........ 1

MEMORANDUM OF LAW ........ 2

I. PRELIMINARY STATEMENT ........ 2

II. STATEMENT OF FACTS ........ 3

III. ARGUMENT ........ 5

A. PRIMO SHOULD BE APPOINTED LEAD PLAINTIFF ........ 5

1. Primo Is Willing to Serve as Class Representative and Has Timely Filed This Motion to Be Appointed Lead Plaintiff ........ 7

2. Primo Has the "Largest Financial Interest" ........ 7

3. Primo Otherwise Satisfies Rule 23's Requirements ........ 8

4. Primo Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses ........ 10

B. LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED ........ 11

IV. CONCLUSION ........ 12

CERTIFICATE REGARDING GOOD FAITH CONFERENCE ........ 12

CERTIFICATE OF SERVICE ........ 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bishop v. N.Y. City Dep't of Hous. Pres. & Dev.*,
141 F.R.D. 229 (S.D.N.Y. 1992) ....................9

*Brustein v. Lampert*,
No. 04-61159-CIV, 2005 WL 8154797 (S.D. Fla. June 16, 2005)....................8

*Janbay v. Canadian Solar, Inc.*,
272 F.R.D. 113 (S.D.N.Y. 2010) ....................9

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
311 F.R.D. 373 (S.D.N.Y. 2015) ....................11

*Miller v. Dyadic Int'l, Inc.*,
No. 07-80948-CIV, 2008 WL 2465286 (S.D. Fla. Apr. 18, 2008)....................9

*Mulvaney v. Geo Grp., Inc.*,
No. 16-CV-81494, 2016 WL 10519276 (S.D. Fla. Nov. 21, 2016) ....................11

*Piven v. Sykes Enters.*,
137 F.Supp.2d 1295 (M.D. Fla. 2000)....................8

*Prado-Steinman ex rel. Prado v. Bush*,
221 F.3d 1266 (11th Cir. 2000) ....................8

*Tran v. ERBA Diagnostics, Inc.*,
No. 15-CV-24440, 2016 WL 7438833 (S.D. Fla. Apr. 8, 2016) ....................8

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
589 F. Supp. 2d 388 (S.D.N.Y. 2008)....................11

*Weinberg v. Atlas Air Worldwide Holdings, Inc.*,
216 F.R.D. 248 (S.D.N.Y. 2003) ....................9

**Statutes**

15 U.S.C. § 78u-4 .................... *passim*

Private Securities Litigation Reform Act of 1995 .................... *passim*

Securities Exchange Act of 1934....................1, 2, 9, 13

## **Rules**

Fed. R. Civ. P. 23 ....................................................................................................2, 6, 8, 9

Local Civil Rule 7.1(a)(3) ....................................................................................................12

**MOTION**

Movant, Jordan Dario Primo ("Primo"), by and through his counsel, hereby moves this Court pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for an Order: (1) appointing Primo as Lead Plaintiff on behalf of a class (the "Class") consisting of all persons who purchased or otherwise acquired, or sold or otherwise disposed of, securities of Genius Group Limited ("Genius" or the "Company") between April 12, 2022 and May 30, 2025, inclusive (the "Class Period"); and (2) approving proposed Lead Plaintiff's selection of Pomerantz LLP ("Pomerantz") as Lead Counsel and Miller Shah LLP ("Miller Shah") as Liaison Counsel for the Class.[1]

This Motion is supported by the Memorandum of Law submitted herewith, the Declaration of Nathan C. Zipperian in Support of Motion ("Zipperian Decl."), and all exhibits thereto.

---

[1] Primo is aware that on August 4, 2026, the Court entered an Order, *inter alia*, administratively closing and staying the above-captioned action (the "Action") pending resolution of a motion to transfer the Action to the United States District Court for the Southern District of New York. *See* Dkt. No. 36. Here, pursuant to the PSLRA, the statutory deadline to file a motion for appointment as Lead Plaintiff in this Action is August 28, 2026, on which date any member of the putative Class may so move. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). At the time of this filing's submission, the Court has yet to administratively open the Action. Thus, Primo, having no open docket in which to file the present motion, is at risk of forfeiting his right under the PSLRA to move for appointment as Lead Plaintiff within the 60-day deadline set by the PSLRA. *See id.* For the foregoing reasons and because this is the only docket in which he can timely file his motion for appointment as Lead Plaintiff, although he is aware that the Court has administratively closed and stayed this Action, Primo respectfully submits the present motion to the Court to preserve his statutory right discussed above.

# MEMORANDUM OF LAW

## I. PRELIMINARY STATEMENT

The complaint ("Complaint") (Dkt. No. 1) in the Action alleges that Citadel Securities LLC ("Citadel") and Virtu Americas LLC ("Virtu" and, together with Citadel, "Defendants") defrauded investors, as well as engaged in a series of manipulative transactions in Genius securities, during the Class Period in violation of the Exchange Act. Genius investors, including Primo, incurred significant losses in connection with their transactions in Genius securities during the Class Period as a result of the Defendants' alleged wrongful conduct, damaging Primo and other Genius investors.

Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiff the movant or group of movants that possesses the largest financial interest in the outcome of the litigation and that satisfies the relevant requirements of Federal Rule of Civil Procedure 23 ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Primo believes that he is entitled to a rebuttable presumption favoring his appointment because, to his knowledge, he has the largest financial interest in the relief sought by the Class in this Action among those seeking to serve as Lead Plaintiff by virtue of, *inter alia*, his having cumulatively purchased and sold a total of 345,875.90955 shares of Genius stock during the Class Period. *See* Zipperian Decl., Exhibits ("Exs.") A-B. Accordingly, Primo believes that he has the largest financial interest in the relief sought in this litigation among those seeking to serve as Lead Plaintiff. Beyond his considerable financial interest, Primo also meets the applicable requirements of Rule 23 because his claims are typical of those of absent Class members and he will fairly and adequately represent the interests of the Class.

To fulfill his obligations as Lead Plaintiff and vigorously prosecute this Action on behalf of the Class, Primo has selected Pomerantz as Lead Counsel and Miller Shah as Liaison Counsel

for the Class. These firms' attorneys are highly experienced in the areas of securities litigation and class actions, and have successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firms' respective resumes.

Accordingly, Primo respectfully requests that the Court enter an order appointing him as Lead Plaintiff for the Class and approving his selection of Pomerantz as Lead Counsel and Miller Shah as Liaison Counsel for the Class.

## II. STATEMENT OF FACTS

As alleged in the Complaint, this Action arises from the Defendant broker-dealers' manipulative and illegal trading in the securities of Genius, an educational technology company that delivers AI-powered training and tools to six million students in more than 100 different countries. For years, Defendants repeatedly, and on a massive scale, placed and executed manipulative trades that were designed to, and did, artificially deflate the price of Genius stock and expand its bid-ask spread, thereby causing investors to sell their shares at artificially depressed prices while also inflating their transaction costs. This fraudulent scheme, known as "spoofing," enriched Defendants while devastating Primo and other Genius investors.

As the United States Securities and Exchange Commission ("SEC") has explained, "spoofing" is a manipulative and illegal trading practice that involves submitting and then cancelling buy or sell orders without any genuine intent to execute them. The purpose of these "baiting orders" is to mislead other market participants about the level of supply and/or demand for a security, or about the degree of its price volatility, thereby influencing market prices for that security. For instance, a large quantity of baiting orders on the "sell-side" misleads investors into believing that there is excess supply for a security, thereby lowering market prices. Similarly, a manipulator may place and cancel orders on both sides of the order book to create

the appearance of excessive volatility, and therefore excessive risk, driving prices downwards. As numerous financial economists have recognized, this latter form of spoofing in particular can have especially long-term and persistent effects on the prices of the manipulated security, while also increasing transaction costs for investors by inflating its bid-ask spread. With respect to the analyses of trading in Genius securities presented in the Complaint, "Baiting Orders" are defined as those orders canceled within 100 milliseconds of placement; this definition is conservative and is employed in the Complaint in an effort to identify Defendants' most egregious and obvious misconduct.

By manipulating the market price in this manner, the spoofer seeks to benefit his own positions in the security. For instance, the spoofer may place a large quantity of sell-side Baiting Orders that move the market price down; that downward price movement may benefit the spoofer's pre-existing short positions, or the spoofer may place a number of new buy orders so that he can acquire the stock at the prices artificially depressed by his manipulative conduct.

Additionally, if the spoofer is a large broker-dealer and market maker, like Defendants, it can also use spoofing to manufacture mini "arbitrage opportunities" on incoming order flow in order to profit at its customers' expense. For example, suppose a customer seeks to sell shares of Genius stock. A broker-dealer/market-maker could flash sell-side Baiting Orders in a market with faster price feeds to drive the price down, while flashing buy-side orders in a market with a slower price feed to drive the price up. The broker-dealer/market-maker executes its customer's trades at an inferior price in the market with the faster feed, absorbing the trades as inventory; it then sells the inventory generated from the customer's trade at the higher "spoofed" price in the parallel market for its own account. Indeed, as discussed in the Complaint, the SEC fined Citadel $23 million for engaging in this type of misconduct. Moreover, the head of institutional

equity sales at Virtu nicknamed this particular flavor of spoofing the "Three Tick Boogie." As discussed further in the Complaint, market data indicates that Defendants engaged in this type of manipulation with respect to Genius stock; for example, within one minute of certain spoofing events discussed in the Complaint, an astonishing 35% of all off-exchange short trades in Genius were executed.

In all cases, the spoofer's misconduct leaves innocent market participants, who must trade into a distorted market—both in terms of depressed share prices and inflated transaction costs—holding the bag.

During the Class Period, Defendants repeatedly entered thousands of Baiting Orders designed to create the false impression that there was both excess supply and excess volatility in Genius stock. These manipulative orders were calculated to (and successfully did) deceive or induce other investors to sell their holdings at artificially deflated prices.

Significantly, prior to and during the Class Period, regulators had specifically warned Defendants that the trading platforms they had developed and operated could be—and in fact had been—used to facilitate unlawful trading activity such as spoofing. For instance, in 2023, the SEC fined Citadel $7 million for "abusive short selling practices." And in 2017, even prior to the start of the Class Period, the SEC fined Citadel $22.6 million for "misleading [its retail customers] about the way it priced trades." Unsurprisingly, Citadel CEO Ken Griffin has repeatedly resisted efforts by the SEC to create greater transparency into trading activity, including into short-selling.

## III. ARGUMENT

### A. PRIMO SHOULD BE APPOINTED LEAD PLAINTIFF

Primo should be appointed Lead Plaintiff because he has timely filed a motion for appointment as Lead Plaintiff, to the best of his knowledge has the largest financial interest in

this litigation among those seeking to serve as Lead Plaintiff, and otherwise strongly satisfies the requirements of Rule 23.

The PSLRA requires a plaintiff who files an action governed by its provisions to publish a notice (the "Notice") to the class within 20 days of filing the action, informing putative class members of: (1) the pendency of the action; and (2) their right to file a motion for appointment as lead plaintiff within 60 days after publication of the Notice. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(I)-(II). Additionally, the PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to the Notice, and to do so by the later of (1) 90 days after the date of publication or (2) as soon as practicable after the Court decides any pending motion to consolidate. *See id.* § 78u-4(a)(3)(B)(i)-(ii).

Pursuant to the PSLRA, the Court "shall appoint" the "most adequate plaintiff" to serve as lead plaintiff. *Id.* § 78u-4(a)(3)(B)(i). The PSLRA provides a "[r]ebuttable presumption" that "the most adequate plaintiff . . . is the person or group of persons that":

> (aa) has either filed the complaint or made a motion in response to a notice . . . ;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*Id.* § 78u-4(a)(3)(B)(iii)(I).

As set forth below, Primo satisfies all three of these criteria and thus is entitled to the presumption that he is the most adequate plaintiff of the Class and, therefore, should be appointed Lead Plaintiff for the Class.

### 1. Primo Is Willing to Serve as Class Representative and Has Timely Filed This Motion to Be Appointed Lead Plaintiff

On June 29, 2026, counsel for the plaintiff in the Action caused the statutorily required Notice to be published via *Business Wire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA, announcing that a securities class action had been filed on behalf of investors in Genius securities, and advising such investors that they had until August 28, 2026—*i.e.*, 60 days from the date of the Notice's publication—to file a motion to be appointed as lead plaintiff. *See* Zipperian Decl., Ex. C.

Primo has filed the instant motion pursuant to the Notice, and he has submitted a sworn Certification attesting that he is willing to serve as a representative for the Class, and to provide testimony at deposition and trial, if necessary. *See id.*, Ex. B. Accordingly, Primo satisfies the first requirement to serve as Lead Plaintiff of the Class.

### 2. Primo Has the "Largest Financial Interest"

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class[.]" 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). To the best of his knowledge, Primo has the largest financial interest of any Genius investor or investor group seeking to serve as Lead Plaintiff, having cumulatively purchased and sold a total of 345,875.90955 shares of Genius stock during the Class Period. *See* Zipperian Decl., Exs. A-B. As such, Primo believes that he possesses the largest financial interest in the outcome of this litigation within the meaning of the PSLRA among those seeking to serve as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

### 3. Primo Otherwise Satisfies Rule 23's Requirements

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In determining whether a lead plaintiff movant satisfies Rule 23's requirements, the Court need not raise its inquiry to the level required in ruling on a motion for class certification. Instead, a *prima facie* showing that a movant satisfies Rule 23's requirements is sufficient. *See Brustein v. Lampert*, No. 04-61159-CIV, 2005 WL 8154797, at *7 (S.D. Fla. June 16, 2005); *Tran v. ERBA Diagnostics, Inc.*, No. 15-CV-24440, 2016 WL 7438833, at *1 (S.D. Fla. Apr. 8, 2016). In addition, typicality and adequacy of representation are the only provisions of Rule 23 relevant to a determination of lead plaintiff under the PSLRA. *See Brustein*, 2005 WL 8154797, at *7; *Tran*, 2016 WL 7438833, at *1. Further, the Complaint in the Action sufficiently pleads Rule 23(a)(1) numerosity and Rule 23(a)(2) common questions in a manner common to all Class members, including Primo.

The typicality requirement of Rule 23(a)(3) is satisfied where the named representative's claims have the "same essential characteristics as the claims of the class at large." *Prado-Steinman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000); *see also Piven v. Sykes*

*Enters.*, 137 F.Supp.2d 1295, 1306 (M.D. Fla. 2000) (same). "[T]he claims of the class representative need not be identical [to] those of all members of the class. '[T]he typicality requirement may be satisfied even if there are factual dissimilarities or variations between the claims of the named plaintiffs and those of other class members, including distinctions in the qualifications of the class members.'" *Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 113, 120 (S.D.N.Y. 2010) (quoting *Bishop v. N.Y. City Dep't of Hous. Pres. & Dev.*, 141 F.R.D. 229, 238 (S.D.N.Y. 1992)).

Primo's claims are typical of those of the Class. Primo alleges, like other Class members, that the Defendants violated the Exchange Act by engaging in a fraudulent scheme to manipulate the market for Genius securities. Primo, like other Class members, purchased and sold shares of Genius stock during the Class Period, and was damaged as a result of the Defendants' alleged wrongful conduct. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3).

The adequacy of representation requirement of Rule 23(a)(4) "is satisfied where . . .: '(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) the class members' interests are not antagonistic to one another; and (3) the class [representative] has sufficient interest in the outcome of the case to ensure vigorous advocacy.'" *Miller v. Dyadic Int'l, Inc.*, No. 07-80948-CIV, 2008 WL 2465286, at *6 (S.D. Fla. Apr. 18, 2008) (quoting *Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 253 (S.D.N.Y. 2003)).

Primo is an adequate representative for the Class. As set forth in greater detail below, in Pomerantz and Miller Shah, Primo has retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as this Action, and submits his choice of

Pomerantz and Miller Shah to the Court for approval as Lead Counsel and Liaison Counsel, respectively, for the Class pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v). There is no evidence of antagonism or conflict between Primo's interests and those of the Class. Moreover, Primo has submitted a sworn Certification declaring his commitment to protecting the interests of the Class (*see* Zipperian Decl., Ex. B), and his significant financial interest demonstrates that he has a sufficient interest in the outcome of this litigation to ensure vigorous advocacy on behalf of the Class.

Further demonstrating his adequacy, Primo has submitted a Declaration attesting to, *inter alia*, his background, his investing experience, his understanding of the responsibilities of a Lead Plaintiff appointed pursuant to the PSLRA, his decision to seek appointment as Lead Plaintiff, and the steps that he is prepared to take to prosecute this litigation on behalf of the Class. *See id.*, Ex. D.

**4. Primo Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses**

The presumption favoring Primo's appointment as Lead Plaintiff may be rebutted only upon proof "by a member of the purported plaintiff class" that the presumptively most adequate plaintiff:

> (aa) will not fairly and adequately protect the interests of the class; or
>
> (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Primo's ability and desire to fairly and adequately represent the Class has been discussed above. Primo is not aware of any unique defenses the Defendants could raise that would render him inadequate to represent the Class. Accordingly, Primo should be appointed Lead Plaintiff for the Class.

### B. LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to "select and retain counsel to represent the class[,]" subject to the approval of the Court. *Id.* § 78u-4(a)(3)(B)(v). "The Court should interfere with lead plaintiff's selection only when necessary 'to protect the interests of the class.'" *Mulvaney v. Geo Grp., Inc.*, No. 16-CV-81494, 2016 WL 10519276, at *3 (S.D. Fla. Nov. 21, 2016) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)); *see also Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 383 (S.D.N.Y. 2015) ("The PSLRA 'evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention.'" (quoting *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 398 (S.D.N.Y. 2008))).

Here, Primo has selected Pomerantz as Lead Counsel and Miller Shah as Liaison Counsel for the Class. Pomerantz is highly experienced in the areas of securities litigation and class actions, and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in its firm resume submitted herewith. *See* Zipperian Decl., Ex. E. In overview, Pomerantz is a premier firm in the area of securities litigation based in New York, with offices in Chicago, Los Angeles, Paris, France, London, the U.K., and Tel Aviv, Israel. *See id.* For more than 85 years, Pomerantz has represented defrauded investors. *See id.* As Lead Counsel in *In re Petrobras Securities Litigation*, No. 14-cv-09662 (S.D.N.Y.), Pomerantz secured a recovery of $3 billion on behalf of investors in the securities of Petrobras, the largest settlement ever in a class action involving a foreign issuer and the fifth-largest class action settlement ever achieved in the United States. *See id. Petrobras* is part of a long line of record-setting recoveries led by Pomerantz, including the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, No. 1:06-cv-01825 (E.D.N.Y.), in June 2010.

*See id.* More recently, as Lead Counsel on behalf of a class of Fiat Chrysler Automobiles N.V. investors, Pomerantz reached a $110 million settlement on behalf of the class. *See id.*

Likewise, Miller Shah is well-qualified to serve as Liaison Counsel for the Class. Miller Shah maintains an office in Fort Lauderdale, Florida, which is located in this District, and, as its firm resume reflects, the firm specializes in securities class action matters, among other practice areas. *See id.*, Ex. F. Miller Shah's attorneys have experience in achieving substantial recoveries in class actions, and they have extensive familiarity with the Local Civil Rules and practice norms of this District.

As a result of their extensive experience in litigation involving issues similar to those raised in the instant Action, Primo's choice of counsel, with Pomerantz as Lead Counsel and Miller Shah as Liaison Counsel, have the skill, knowledge, expertise, and experience that will enable these firms to prosecute this Action effectively and expeditiously. Thus, the Court may be assured that by approving Primo's selection of Pomerantz as Lead Counsel and Miller Shah as Liaison Counsel, the members of the Class will receive the best legal representation available.

## IV. CONCLUSION

For the foregoing reasons, Primo respectfully requests that the Court issue an Order: (1) appointing Primo as Lead Plaintiff for the Class; and (2) approving his selection of Pomerantz as Lead Counsel and Miller Shah as Liaison Counsel for the Class.

## CERTIFICATE REGARDING GOOD FAITH CONFERENCE

Pursuant to Local Civil Rule 7.1(a)(3), counsel for Primo state that they could not confer with counsel for the opposing movants prior to filing the instant motion. The statutory framework of the PSLRA requires all motions seeking appointment as Lead Plaintiff to be filed within 60 days of the publication of the notice of pendency of the action—here, on or before

August 28, 2026. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). No such motions were filed meaningfully in advance of Primo's motion, and it was not possible to confer with counsel for the other movants to determine whether the instant motion would be opposed or to attempt to resolve the issues raised by the motion.

Dated: August 28, 2026

Respectfully submitted,

**MILLER SHAH LLP**

By: */s/ Nathan C. Zipperian*
Nathan C. Zipperian
Jayne A. Goldstein
2103 N. Commerce Parkway
Ft. Lauderdale, FL 33326
Telephone: (954) 515-0123
Facsimile: (866) 300-7367
nczipperian@millershah.com
jagoldstein@millershah.com

*Counsel for Jordan Dario Primo and Proposed Liaison Counsel for the Class*

**POMERANTZ LLP**
J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
ahood@pomlaw.com

*Counsel for Jordan Dario Primo and Proposed Lead Counsel for the Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 28, 2026, I electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via CM/ECF.

*/s/ Nathan C. Zipperian*
Nathan C. Zipperian