# EXHIBIT A

Ryan J. Works (NSBN 9224)
Jimmy F. Dahu (NSBN 17061)
MCDONALD CARANO LLP
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102
Tel: (702) 873-4100
rworks@mcdonaldcarano.com
jdahu@mcdonaldcarano.com

*Attorneys for Citadel Securities LLC*

Michael R. Hogue (NSBN 12400)
GREENBERG TRAURIG LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Tel: (702) 938-6909
hoguem@gtlaw.com

*Attorneys for Anson Funds Management LP and Anson Advisors, Inc.*

Jarrod L. Rickard (NSBN 10203)
SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Tel: (702) 835-6803
jlr@semenzarickard.com

*Attorneys for Virtu Americas LLC*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re<br><br>META MATERIALS INC.,<br><br>Debtor. | Case No.: 24-50792-gs<br><br>Chapter 7 |
| CHRISTINA W. LOVATO, in her capacity as Chapter 7 Trustee of the Bankruptcy Estate of Meta Materials Inc., META MATERIALS INC.; AND DOUG COLLINS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>CITADEL SECURITIES LLC, VIRTU AMERICAS LLC, ANSON FUNDS MANAGEMENT LP, and ANSON ADVISORS, INC.,<br><br>Defendants. | Adv. Case No.: 26-05036-gs<br><br>**DEFENDANTS' MOTION TO WITHDRAW REFERENCE OF ADVERSARY PROCEEDING PURSUANT TO 28 U.S.C. § 157(d) AND FED. R. BANKR. P. 5011**<br><br>RELIEF IS SOUGHT FROM A UNITED STATES DISTRICT JUDGE |

PLEASE TAKE NOTICE that Defendants Citadel Securities LLC, Virtu Americas LLC, Anson Funds Management LP, and Anson Advisors, Inc. (“Defendants”), by and through their counsel, and pursuant to 28 U.S.C. § 157(d), Fed. R. Bankr. P. 5011(a), and Local Rule 5011 hereby move to withdraw the district court’s reference of the above captioned Adversary Proceeding.  This motion is based on the following memorandum of points and authorities, all court records in this matter for which judicial notice is respectfully requested under Fed. R. Evid. 201, and any argument and evidence that may be presented at the hearing for this motion.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..... 1

BACKGROUND ..... 3

A. Meta Materials Dilutes Its Own Shares and Defrauds Its Own Investors ..... 3

B. Trustee and Non-Debtor Plaintiff ..... 4

C. Rule 2004 Discovery ..... 5

D. The Complaint ..... 6

1. Putative Federal Securities Class Action ..... 6
2. Causes of Action Under Federal Securities Law ..... 7
3. Demand of Jury Trial ..... 8

ARGUMENT ..... 8

I. MANDATORY WITHDRAWAL OF THE REFERENCE IS WARRANTED ..... 8

A. Plaintiffs' Market Manipulation Allegations Require Consideration of Complex and Significant Federal Securities Law Issues ..... 9

B. This Putative Class Action Requires the Court to Analyze Complex PSLRA Lead-Plaintiff Issues from the Outset ..... 12

II. PERMISSIVE WITHDRAWAL OF THE REFERENCE IS ALSO APPROPRIATE ..... 13

A. The Efficient Use of Judicial Resources Strongly Favors Withdrawal ..... 14

1. The Complaint's Exchange Act Claims Are Non-Core ..... 14
2. The Bankruptcy Court Likely Lacks Jurisdiction Over Class Claims ..... 15

B. Putative Class Action Status and Demand of Jury Trial Favor Withdrawal ..... 16

C. No Factor Weighs Against Withdrawal ..... 17

CONCLUSION ..... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007) .......... 11

*Dunmore v. United States*,
358 F.3d 1107 (9th Cir. 2004) .......... 14

*Genius Grp. Ltd. v. Citadel Sec. LLC*,
2026 WL 1760342 (S.D.N.Y. June 18, 2026) .......... 2, 12, 13

*Gens v. Colonial Sav.*, *F.A.*,
2012 WL 993713 (N.D. Cal. Mar. 23, 2012) .......... 16

*Haigler v. Dozier (In re Dozier Fin., Inc.)*,
2018 WL 4599860 (D.S.C. Sept. 6, 2018) .......... 14

*In re PG&E Corp.*,
2024 WL 4230403 (Bankr. N.D. Cal. Sept. 18, 2024) .......... 13

*Lara v. Casimiro (In re Casimiro)*,
2006 WL 1581897 (E.D. Cal. June 6, 2006) .......... 16, 17

*Maitland v. Mitchell (In re Harris Pine Mills)*,
44 F.3d 1431 (9th Cir. 1995) .......... 14

*Malone v. Norwest Fin. Cal., Inc.*,
245 B.R. 389 (E.D. Cal. 2000) .......... 17

*Meghji v. Compound Labs, Inc. (In re Celsius Network LLC)*,
670 B.R. 379 (S.D.N.Y. 2025) .......... passim

*Mishkin v. Ageloff*,
220 B.R. 784 (S.D.N.Y. 1998) .......... 11

*Morschauser v. Cont'l Cap. LLC (In re Devore Stop)*
2024 WL 654914 (9th Cir. Feb. 16, 2024) .......... 15

*Ohio Sec. Ins. v. Affinitylifestyles.com, Inc. (In re Affinitylifestyles.com, Inc.)*,
2023 WL 4761634 (D. Nev. July 25, 2023) .......... 15

*Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*,
4 F.3d 1095 (2d Cir. 1993) .......... 14

*Porter v. NationsCredit Consumer Disc. Co. (In re Porter)*,
295 B.R. 529 (Bankr. E.D. Pa. 2003) .......... 15, 16

*Quantum BioPharma Ltd. v. CIBC World Mkts, Inc.*, 2026 WL 861678 (S.D.N.Y. Mar. 30, 2026) .......... 10

*Rannd Res., Inc. v. Von Harten (In re Rannd Res., Inc.)*, 175 B.R. 393 (D. Nev. 1994) .......... 9

*SEC v. ARVCO Cap. Rsch., LLC*, 2012 U.S. Dist. LEXIS 167899 (D. Nev. Nov. 26, 2012) .......... 9

*Sec. Farms v. Int'l Bhd. of Teamsters*, 124 F.3d 999 (9th Cir. 1997) .......... 9, 13, 14

*Shurkin v. Golden State Vintners Inc.*, |471 F. Supp. 2d 998 (N.D. Cal. 2006) .......... 10

*Taxel v. Elec. Sports Rsch. (In re Cinematronics, Inc.)*, 916 F.2d 1444 (9th Cir. 1990) .......... 17

*Vestavia Hills, Ltd. v. U.S. Small Bus. Admin. (In re Vestavia Hills, Ltd.)*, 630 B.R. 816 (S.D. Cal. 2021) .......... 9

*Walleye Opp. Master Fund Ltd. v. Silver Lake Grp., LLC (In re Silver Lake Grp., LLC Sec. Litig.)*, 108 F.4th 1178 (9th Cir. 2024) .......... 10

**Statutes**

15 U.S.C. § 78u-4 .......... 1, 2, 7, 12

28 U.S.C. § 157(b)(2)(A) .......... 14

28 U.S.C. § 157(b)(2)(O) .......... 14

28 U.S.C. § 157(d) .......... passim

**Other Authorities**

Bankr. D. Nev. L.R. 7012 .......... 8

Fed. R. Bankr. P. 7012(b) .......... 8

## PRELIMINARY STATEMENT

This Adversary Proceeding does not belong in the Bankruptcy Court. It is a putative federal securities class action brought pursuant to the Private Securities Litigation Reform Act ("PSLRA") alleging market manipulation by Defendants in violation of Sections 9(a)(2), 9(e), 10(b), and 20A of the Securities Exchange Act of 1934 (the "Exchange Act"). The Complaint asserts no Bankruptcy Code claims. Nor are the allegations related to any conduct in bankruptcy. Resolving this non-core proceeding will require consideration of complex federal securities law issues, which Congress intended for Article III courts, not bankruptcy courts, to decide. Because the Trustee (on behalf of the Debtor's estate) and the non-debtor Plaintiff Doug Collins inappropriately filed this putative securities class action in the Bankruptcy Court, Defendants now move to withdraw the reference.

Mandatory withdrawal is warranted under 28 U.S.C. § 157(d) for several reasons. The Complaint's core allegations are that two Defendants engaged in "spoofing"—placing and rapidly cancelling orders—that artificially depressed the stock price of Debtor Meta Materials, Inc. ("Meta Materials" or the "Debtor") while its stock was listed and that two Defendants purportedly engaged in allegedly improper short-selling around Meta Materials' securities offering. Applying federal securities law to such allegations presents significant securities law issues, including the heightened pleading standard, the purported manipulative acts, alleged scienter, loss causation, reliance, and inquiry notice relating to the statute of limitations. Only a limited number of courts have ever dealt head-on with private securities litigation predicated on similar allegations, and all such cases have been litigated in Article III district courts, not bankruptcy courts.

The PSLRA's lead-plaintiff process, which raises significant legal issues better addressed in Article III district courts, further underscores why this action should not proceed in the Bankruptcy Court. The Court must determine whether the proposed lead plaintiff's claims are

typical of the class, whether the lead plaintiff can fairly and adequately protect the interests of the class, and whether its selection of class counsel should be approved. *See* 15 U.S.C. § 78u-4. That process will also involve significant federal procedural questions, including whether the Trustee (acting for the Debtor) and non-debtor Plaintiff Collins may serve as lead plaintiffs and whether their shared special counsel may serve as lead counsel. It is highly unusual for an issuer like the Debtor here to seek appointment as lead plaintiff for its own shareholders—all the more so where the Debtor and its insiders have themselves been charged with market manipulation surrounding the Debtor's stock. Indeed, one federal district court recently recognized the unique posture of a similar request and denied the issuer's motion as well as appointment of its proposed lead counsel—the same three firms representing the Trustee and Collins here. *See Genius Grp. Ltd. v. Citadel Sec. LLC*, 2026 WL 1760342, at *7 (S.D.N.Y. June 18, 2026).

The firms' dual representation of the Trustee and Collins, a non-debtor plaintiff, raises additional concerns: the firms and Trustee obtained confidential trading data from Defendants through Rule 2004 discovery—data that is "preclud[ed] [from] dissemination . . . beyond the trustee and her professionals for use in this bankruptcy," ECF No. 2821 at 5—and each represented that it had "no connections with [Meta Materials'] shareholders or other parties-in-interest." *See* ECF Nos. 98-100, 2933-35. Nevertheless, the firms now represent Collins, who is not entitled to the Rule 2004 discovery. Material consideration of the PSLRA and these threshold appointment issues will drive this litigation from its outset. Mandatory withdrawal is warranted.

Permissive withdrawal is independently warranted. A district court may withdraw the reference "for cause shown." 28 U.S.C. § 157(d). *First*, withdrawal promotes judicial efficiency because the Complaint asserts only federal securities law claims, which are plainly non-core issues that do not depend on the Bankruptcy Code and could have been brought in district court. Any determination by the Bankruptcy Court in this case would thus be subject to unnecessarily

duplicative *de novo* review by this Court. *Second*, the Bankruptcy Court likely lacks subject-matter jurisdiction over the claims of Collins and absent class members. Leaving this Adversary Proceeding in bankruptcy court would thus risk parallel proceedings, with the Trustee's individual action continuing in the Bankruptcy Court (and any ruling subject to *de novo* review by the Court) and a separate class action filed elsewhere. *Third*, both the class nature of the proceeding and the Complaint's demand for a jury trial further support permissive withdrawal. No factor weighs against permissive withdrawal.

The Court should withdraw the reference.

## BACKGROUND[1]

### A. Meta Materials Dilutes Its Own Shares and Defrauds Its Own Investors

Meta Materials was a Canada-headquartered corporation that went public through a reverse merger and was listed on NASDAQ on June 28, 2021. During the Class Period, the Debtor conducted a series of transactions that progressively diluted the value of existing shares. Those transactions included registered direct offerings paired with an equal number of warrants, Compl. ¶¶ 32, 36; ongoing sales of newly issued shares through an at-the-market program, *id.* ¶ 33; and a "confidentially marketed public offering" of stock and warrants containing an anti-dilution provision that automatically reduced the warrants' exercise price to match any subsequent lower-priced issuance of the same class of securities, *id.* ¶ 34.

The Debtor publicly attributed the decline in its stock price to manipulation by third parties. In June 2023, the Debtor announced it had retained Christian Attar (formerly known as Christian Smith & Jewell LLP), one of the firms now representing the Trustee and Non-Debtor Plaintiff in this action, to investigate "instances of illegal trading, particularly by naked short sellers." Ex. 1

[1] All references to ECF Nos. in this Memorandum refer to the Meta Materials' bankruptcy proceeding, Case No. 24-50792-gs, and all references to "Compl." below refer to ECF No. 1.

(June 27, 2023 Press Release) at 2. In May 2024, the Debtor announced that its legal team had "concluded that [Meta Materials] has meritorious claims for market manipulation against several parties." Ex. 2 (May 20, 2024 Press Release) at 1.

In June 2024, however, the U.S. Securities and Exchange Commission ("SEC") charged the Debtor and two of its former CEOs with conducting a "sophisticated, yet brazen" manipulative scheme of Debtor's stock in June 2021. Ex. 3 (June 25, 2024 SEC Press Release) at 2. According to the SEC, the Debtor engaged "in a scheme to inflate the price of its stock and defraud investors through numerous material misstatements and omissions about the potential value of a stock dividend to be issued as part of the [reverse] merger," cashing in $137.5 million. Ex. 4 (SEC Cease-and-Desist Order) at 2. In early 2024, Meta Materials also settled a federal securities class action brought by *its own investors* alleging the Company made material misrepresentations in connection with the same reverse merger. *See In re Meta Materials Inc. Sec. Litig.*, No. 1:21-cv-07203 (E.D.N.Y. final judgment and order of dismissal entered, and case terminated, on May 22, 2024).

Later that year, on August 9, 2024, Meta Materials filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the District of Nevada and ceased operations. ECF No. 1. On August 21, 2024, Meta Materials was delisted from NASDAQ. Ex. 5 (August 14, 2024 Form 8-K) at 2.

**B. Trustee and Non-Debtor Plaintiff**

Christina Lovato was appointed Trustee on August 15, 2024 following Meta Materials' bankruptcy filing. ECF No. 14. In October 2024, the Trustee retained Christian Attar and Kasowitz Benson Torres LLP as "special counsel" specifically to pursue litigation for alleged stock manipulation through practices such as "naked short selling" and "spoofing." ECF No. 98-1 at 2. The Trustee included Grant & Eisenhofer as additional "special counsel" (and sought the court's approval for the same) for the first time on the same day the instant action was filed. ECF No.

2933. In their declarations in support of the Trustee's *ex parte* application to employ the law firms on a contingency basis, all three firms represented that they had "no connections with" the Trustee, "the Estate's creditors, shareholders or other parties-in-interest." ECF Nos. 98-100, 2933-35.

Plaintiff Doug Collins ("Non-Debtor Plaintiff," together with the Trustee, "Plaintiffs") in this Adversary Action is an individual residing in Tennessee. Compl. ¶ 15. Collins was allegedly a shareholder of Meta Materials during the Alleged Class Period.[2] *Id.* Collins filed three proofs of interest on December 13, 2024 and January 6, 2026 in the bankruptcy case, referring to himself as having an "investor"-based equity interest in the Debtor. *See* ECF Nos. 724, 2511, 2512. Collins is represented by the same three firms—Christian Attar, Kasowitz Benson Torres LLP, and Grant & Eisenhofer—who are also representing the Trustee in this case. *See* Compl. at 1.

**C. Rule 2004 Discovery**

In March 2025, the Trustee served Rule 2004 examination subpoenas to seek discovery in the bankruptcy proceeding of voluminous trading data from Defendants. ECF Nos. 1614-17, 1630-33. Defendants objected and raised concerns that the subpoenas were being employed to improperly pursue discovery in support of claims not on behalf of the Debtor or for the benefit of the Debtor's estate. *See* ECF No. 2425 at 6-8. Defendants also pointed to several ongoing similar federal manipulation claims against Citadel Securities LLC ("Citadel Securities") and Virtu Americas LLC ("Virtu") filed by the same special counsel to the Trustee, noting the risk that any evidence obtained from the Rule 2004 examinations would be used to circumvent the procedural safeguards of the Federal Rules of Civil Procedure and the PSLRA and confer an unfair advantage to non-debtor litigants against the same Defendants. *See* ECF No. 2632 at 13-14.

[2] The Alleged Class Period, as set forth in the Complaint, is June 28, 2021 to August 20, 2024. Compl. at 1.

On February 20, 2026, after multiple rounds of briefing and two hearings, the Bankruptcy Court issued an order requiring Defendants to produce certain material and data because the Trustee "is entitled under Rule 2004 'to determine the scope of viable claims that may exist . . . against potential third parties that may be culpable for causing such harm to the' debtor." ECF No. 2821 at 4. But because of the "concerns regarding special counsel's disinterestedness [] suggest[ing] that these Rule 2004 examinations may not be sought solely for the benefit of the debtor's estate," the court found it appropriate to enter a protective order "precluding the dissemination of the produced information beyond the trustee and her professionals for use in this bankruptcy." *Id.* at 5. That protective order was subsequently entered, requiring that any production made thereunder be solely for the Trustee and her court-appointed counsel. *See* ECF No. 2887 at 4, ¶ 5.

### D. The Complaint

#### 1. Putative Federal Securities Class Action

On August 7, 2026, the Trustee and the Non-Debtor Plaintiff Doug Collins filed this Adversary Proceeding. Plaintiffs purport to "bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) individually and on behalf of a Class consisting of all persons and entities that transacted in the publicly traded securities of Meta Materials" during the Alleged Class Period. Compl. ¶ 166.

The Complaint asserts claims against Defendants Citadel Securities and Virtu (together, the "Broker-Dealer Defendants"), which are broker-dealers registered with the SEC. *Id.* ¶¶ 16-17, 40. As market makers, Citadel Securities and Virtu help keep financial markets operating by being ready to buy and sell securities at any time, helping to ensure quick execution and price stability. The Complaint also asserts claims against Anson Funds Management LP, a Texas-based registered investment advisor with the SEC, and Anson Advisors, Inc., a corporation organized under the laws of Ontario and with a principal place of business in Ontario, registered with the Ontario Securities

Commission, and registered as an exempt reporting advisor with the SEC (together, the "Anson Funds Defendants"). *Id.* ¶¶ 18-19.

Although Plaintiffs filed the Complaint in the Bankruptcy Court, they proceeded to issue a lead plaintiff notice pursuant to the requirement under the PSLRA. 15 U.S.C. § 78u-4(a)(1). In its public notice, Plaintiffs' counsel informed investors that they may be able to seek appointment as lead plaintiff by "complying with the relevant provisions of the [PSLRA]" and move the court by October 12, 2026. Ex. 6 (August 12, 2026 Business Wire Notice) at 3.

**2. Causes of Action Under Federal Securities Law**

The Complaint alleges four causes of action, all of which arise exclusively under the federal securities laws. Compl. ¶ 24. No claims under the Bankruptcy Code are asserted.

Counts I and II, brought against all Defendants, allege violations of Section 10(b), Sections 9(a)(2) and 9(e) of the Exchange Act on the grounds that Defendants allegedly engaged in manipulative trading schemes during the Alleged Class Period. Compl. ¶¶ 173-189. The Complaint alleges that the Broker-Dealer Defendants engaged in pervasive "spoofing"—whereby they allegedly placed massive volumes of buy-side or sell-side Baiting Orders with no intention to execute and then rapidly cancelled the orders within seconds. *Id.* ¶¶ 62-66. Such "Baiting Orders" allegedly misled other market participants into believing there was excess supply, in the case of sell-side orders, or excess demand, in the case of buy-side orders. *Id.* Spoofers could allegedly flash sell-side "Baiting Orders" to drive the price down and benefit from the downward price movement through pre-existing short positions or by placing buy orders to acquire the stock at the lower "spoofed" price. *Id.* ¶¶ 3-4. According to the Complaint, the continuous placement and cancellation of thousands of Baiting Orders artificially depressed the price of Meta Materials stock over time. *Id.* ¶ 64.

In addition to alleging a spoofing scheme, the Complaint alleges that Virtu engaged in "naked short selling," which refers to selling short without having borrowed or arranged to borrow securities to deliver to the buyer within the standard settlement period. *Id.* ¶ 5. It also alleges that the Anson Funds Defendants purportedly engaged in manipulative conduct known as "shorting and distorting" and that the Anson Funds Defendants also purportedly sold short on material nonpublic information. *Id.* ¶ 111-13.

Count III asserts a separate Section 10(b) claim under the Exchange Act against the Anson Funds Defendants under the misappropriation theory of insider trading, alleging that they purportedly traded on material nonpublic information. *Id.* ¶¶ 190-192.

Count IV asserts a claim under Section 20A of the Exchange Act against the Anson Funds Defendants, alleging that other investors transacted in Meta Materials securities at the same time the Anson Funds Defendants were allegedly trading on nonpublic information. *Id.* ¶¶ 190-192, 200.

### 3. Demand of Jury Trial

The Complaint demands a jury trial on all counts. *See id.* at 1. Defendants have not consented to a jury trial in the Bankruptcy Court. Pursuant to Fed. R. Bankr. P. 7012(b) and Local Rule 7012, Defendants also have not consented to the entry of final orders or judgments by the bankruptcy judge if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## ARGUMENT

## I. MANDATORY WITHDRAWAL OF THE REFERENCE IS WARRANTED

A district court must withdraw the reference of an adversary proceeding "if the court determines that resolution of the proceeding requires consideration of both Title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 28

U.S.C. § 157(d). The Ninth Circuit has held that Section 157 "*mandates* withdrawal in cases requiring material consideration of non-bankruptcy federal law." *Sec. Farms v. Int'l Bhd. of Teamsters*, 124 F.3d 999, 1008 (9th Cir. 1997). Mandatory withdrawal turns on "whether the issue to be decided involve[s] significant and material questions of non-bankruptcy federal law." *Vestavia Hills, Ltd. v. U.S. Small Bus. Admin. (In re Vestavia Hills, Ltd.)*, 630 B.R. 816, 852-53 (S.D. Cal. 2021) (quotation and citation omitted). Withdrawal is warranted if the case requires "significant interpretation of federal laws that Congress would have intended to have decided by a district judge rather than a bankruptcy judge." *Id.* at 850 (quotation and citation omitted).

Resolving the Complaint's market-manipulation claims will require substantial and material consideration of complex federal securities law—the hallmark of mandatory withdrawal under 28 U.S.C. § 157(d). This Court has previously viewed such consideration of federal securities law to warrant mandatory withdrawal. *See, e.g.*, *Rannd Res., Inc. v. Von Harten (In re Rannd Res., Inc.)*, 175 B.R. 393, 396 (D. Nev. 1994) (mandatory withdrawal of adversary proceeding where the claims involved "§ 12(2) of the Securities Act of 1933, § 10 of the Securities Exchange Act of 1934, and Rule 10b–5"); *see also SEC v. ARVCO Cap. Rsch., LLC*, 2012 U.S. Dist. LEXIS 167899, at *4-5 (D. Nev. Nov. 26, 2012) (applying § 157(d) to deny motion to refer to bankruptcy court where "the complaint allege[d] violations of Section 17(a)(1) of the Securities Act and Section 10(b) and Rules 10b-5(a) and 10b-5(c) of the Exchange Act"). There is no reason to depart from that precedent here.

### A. Plaintiffs' Market Manipulation Allegations Require Consideration of Complex and Significant Federal Securities Law Issues

Here, Plaintiffs allege that Defendants engaged in "spoofing" and other manipulative conduct that gives rise to claims arising exclusively under the federal securities fraud statutes, *i.e.*, Sections 9(a)(2), 9(e), 10(b) and 20A of the Exchange Act and Rule 10b-5. On the face of the Complaint, the only material issues the Court must consider to resolve this case arise under the

substantive federal securities laws. And these are not run-of-the-mill securities fraud allegations: from the Broker-Dealer Defendants' review, approximately ten district courts have ever addressed the application of federal securities law to "spoofing" allegations in a private lawsuit head on.

The Complaint alleges that the two Broker-Dealer Defendants engaged in market manipulation through "spoofing" that artificially depressed Meta Materials' stock price, which in turn caused losses to the Debtor and investors that transacted in Meta Materials' shares. Compl. ¶¶ 62-66. To assess such a manipulation claim based on spoofing, the Court must apply not only Rule 9(b)'s heightened pleading standard but also the exacting pleading requirements of the PSLRA to determine significant federal securities law issues, including: (1) whether spoofing as a "manipulative act" is sufficiently pleaded; (2) which "indicia differentiat[e] market manipulation from legitimate trading for purposes of scienter"; (3) how spoofing, which by definition lasts only seconds, may support loss causation under either "the theory of temporal proximity" or "a theory of long-term impact"; (4) whether there was "reliance on an assumption of an efficient market free of manipulation"; and (5) "whether and when" an issuer or an investor "should have been aware of, or was on inquiry notice of Defendants' alleged spoofing schemes." *See Quantum BioPharma Ltd. v. CIBC World Mkts., Inc.*, 2026 WL 861678, at *15, 18-21 (S.D.N.Y. Mar. 30, 2026).

The same is true to resolve the purported "short selling" allegations, including those asserted against the Anson Defendants. Alleged "[i]nsider trading actions must [also] meet the higher, exacting pleading standards of Federal Rule of Civil Procedure 9(b) and the . . . PSLRA." *Walleye Opp. Master Fund Ltd. v. Silver Lake Grp., LLC (In re Silver Lake Grp., LLC Sec. Litig.)*, 108 F.4th 1178, 1191 (9th Cir. 2024) (citation and quotation omitted). And similar key elements, including scienter, will apply in the alleged insider trading and purported misappropriation context, and courts must assess whether a plaintiff has made the mandatory "show[ing] that a defendant purchased or sold securities while [actually] possessing material, non-public information." *Id.*; *see also Shurkin*

*v. Golden State Vintners Inc.*, 471 F. Supp. 2d 998, 1025-26 (N.D. Cal. 2006), *aff'd*, 303 F. App'x 431 (9th Cir. 2008) ("blanket assertions" were not sufficient); *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 101-02 (2d Cir. 2007) (because "short selling . . . is not, by itself, manipulative," the PSLRA's heightened "pleading requirement is particularly important in manipulation claims because in some cases scienter is the only factor that distinguishes legitimate trading from improper manipulation").

Article III courts should be—and have been—the fora to decide these federal securities law issues. By way of example, private Exchange Act claims predicated on allegations of spoofing are a recent phenomenon, and none have been brought in bankruptcy court. Indeed, the vast majority were filed in the Southern District of New York.[3] The most relevant case authority will come from decisions by the district courts that have considered the application of federal securities law to spoofing. *Mishkin v. Ageloff*, 220 B.R. 784, 799 (S.D.N.Y. 1998) (mandatory withdrawal where the court was "struck by the fact that the overwhelming majority of cases cited [] were decided by Article III courts").

Withdrawal of the reference is particularly appropriate because cases involving claims that third parties "spoofed" a company's stock price are relatively new. *Celsius Network* is directly on point. *Meghji v. Compound Labs, Inc. (In re Celsius Network LLC)*, 670 B.R. 379, 389 (S.D.N.Y. 2025). There, as here, a representative of a bankruptcy estate commenced an adversary proceeding

---

[3] *See, e.g.*, *CP Stone Fort Holdings, LLC v. Does*, No. 1:16-cv-4991 (N.D. Ill.); *Chopper Trading LLC v. Allston Trading LLC*, No. 1:19-cv-1674 (N.D. Ill.); *Kessev Tov, LLC v. Doe(s)*, No. 1:20-cv-4947 (N.D. Ill.); *Harrington Glob. Opp. Fund, Ltd. v. CIBC World Mkts. Inc.*, No. 1:21-cv-761 (S.D.N.Y.); *Nw. Biotherapeutics, Inc. v. Canaccord Genuity LLC*, No. 1:22-cv-10185 (S.D.N.Y.); *Phunware, Inc. v. UBS Securities LLC*, No. 1:23-cv-6426 (S.D.N.Y.); *Mullen Auto., Inc. v. IMC Fin. Mkts.*, No. 1:23-cv-10637 (S.D.N.Y.); *Quantum Biopharma Ltd. v. CIBC World Mkts., Inc.*, No. 1:24-cv-7972 (S.D.N.Y.); *Durkacz v. CIBC World Mkts, Inc.*, No. 1:25-cv-10565 (S.D.N.Y.); *Xdood LLC v. Interactive Brokers Grp.*, No. 1:25-cv-8536 (S.D.N.Y.); *Genius Grp. Ltd.*, No. 1:25-cv-9546 (S.D.N.Y.); *Asia Broadband, Inc. v. Virtu Fin. Inc.*, No. 2:26-cv-175 (C.D. Cal.); *Reynolds v. Citadel Sec. LLC*, No. 1:26-cv-24485 (S.D. Fla.).

asserting a federal securities-fraud claim arising from trading losses unrelated to any substantive right under the Bankruptcy Code. The district court held that withdrawal of the reference of federal securities claims involving cryptocurrencies was mandatory because adjudication was "not simply a matter of applying well-established federal law to the specific facts of a case," but rather of "applying [precedent] to a novel set of circumstances." *Id.* at 389. So too here. There is no direct guidance from the Supreme Court or Ninth Circuit, and while a number of district courts have rendered decisions on spoofing, they are "of recent vintage and were issued without the benefit of any guidance from [higher courts]." *Id.* at 388. "Because this case necessitates significant interpretation of [federal securities law] and involves more than the routine application of federal laws outside the Bankruptcy Code," the Court must withdraw the reference of this Adversary Proceeding. *Id.* at 390 (quotation and citation omitted).

### B. This Putative Class Action Requires the Court to Analyze Complex PSLRA Lead-Plaintiff Issues from the Outset

Before assessing the Complaint's allegations on a motion to dismiss, the Court will also be required to address several significant legal issues that arise under the PSLRA. Plaintiffs' counsel issued a lead plaintiff notice as required by the PSLRA. 15 U.S.C. § 78u-4(a)(3)(A)(i). According to the public notice, the deadline for Meta Materials investors to move for lead plaintiff is October 12, 2026. Ex. 6. Following that deadline, the Court will be required to apply the PSLRA and assess, among other things, the highly unusual question of whether the Trustee, acting on behalf of the Debtor's estate, could serve as lead plaintiff in this putative class action. To Defendants' knowledge, only one court has decided whether an issuer can serve as lead plaintiff in a securities class action and held that it cannot. *See Genius Grp. Ltd.*, 2026 WL 1760342, at *3-5 (recognizing the unique posture of the case and holding that the issuer failed the typicality and adequacy requirements of Rule 23). That Court also held that the same three law firms that are special counsel

to the Trustee and represent the Non-Debtor Plaintiff here could not serve as lead counsel for the proposed class. *Id.* at *5.

The PSLRA's lead plaintiff process may raise other complex issues as well, including whether Plaintiffs' counsel can serve as lead counsel while representing both the Trustee and the Non-Debtor Plaintiff, the latter of whom is precluded from reviewing or utilizing the confidential trading data obtained from Defendants through Rule 2004 discovery.

The PSLRA imposes on district courts an independent obligation to approve lead counsel to prevent potential abuses in federal securities class actions. *Id.* at *7 (denying lead plaintiff and lead counsel application where it "smack[ed] of the sort of lawyer-driven litigation that the PSLRA aims to avoid"). This case, like other similar actions Plaintiffs' counsel already filed against the Broker-Dealer Defendants, requires careful consideration of the PSLRA in the lead counsel approval process.

Ultimately, as another bankruptcy court in this circuit recently explained, "the PSLRA is unfamiliar territory for bankruptcy courts to navigate" and bankruptcy courts typically "will not venture there." *In re PG&E Corp.*, 2024 WL 4230403, at *4 (Bankr. N.D. Cal. Sept. 18, 2024) (noting "very few reported cases of bankruptcy courts dealing head-on with the PSLRA").

This Adversary Proceeding does not belong in the Bankruptcy Court. Mandatory withdrawal of the reference is proper.

## II. PERMISSIVE WITHDRAWAL OF THE REFERENCE IS ALSO APPROPRIATE

In addition to mandatory withdrawal, a district court may withdraw the reference "for cause shown." 28 U.S.C. § 157(d). "In determining whether cause exists, a district court should consider the efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors." *Sec. Farms*, 124 F.3d at 1008. Here, every relevant factor overwhelmingly favors withdrawal, and no countervailing

consideration weighs against it. Permissive withdrawal is appropriate.

### A. The Efficient Use of Judicial Resources Strongly Favors Withdrawal

#### 1. The Complaint's Exchange Act Claims Are Non-Core

The first factor of judicial efficiency favors withdrawal where "non-core issues predominate." *Id.* at 1008-09 ("Inasmuch as a bankruptcy court's determinations on non-core matters are subject to *de novo* review by the district court, unnecessary costs could be avoided by a single proceeding in the district court."); *see also Celsius Network*, 670 B.R. at 389 ("[T]he 'threshold' inquiry in evaluating a request for permissive withdrawal was whether the claim was core or non-core.") (quoting *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1101 (2d Cir. 1993)).

The Complaint's claims, all arising under the Exchange Act, are non-core. Federal securities law claims are quintessentially non-core issues because they "do not depend on Title 11 for their existence" and "the trustee could have brought them in the district court." *Dunmore v. United States*, 358 F.3d 1107, 1115 (9th Cir. 2004); *see also Haigler v. Dozier (In re Dozier Fin., Inc.)*, 2018 WL 4599860, at *4 (D.S.C. Sept. 6, 2018), *report and recommendation adopted*, 2019 WL 1075072 (D.S.C. Mar. 7, 2019) (holding "the Complaint's causes of action [including violations of the Securities Act and the Exchange Act] . . . have been routinely determined as non-core proceedings by courts") (collecting cases). Plaintiffs essentially concede as much by asserting only "related to" jurisdiction of the bankruptcy court. Compl. ¶ 21. As the Ninth Circuit has explained, "claims that are related to Title 11 are 'noncore' proceedings" whereas claims that "arise under or in Title 11 are deemed to be 'core' proceedings." *Maitland v. Mitchell (In re Harris Pine Mills)*, 44 F.3d 1431, 1435 (9th Cir. 1995).

The Complaint's passing reference to 28 U.S.C. § 157(b)(2)(A) and (O) does not transform this proceeding into a core matter. *See* Compl. ¶ 23. This Court has held that these two are "catch-

all" provisions that must be "construed narrowly." *Ohio Sec. Ins. v. Affinitylifestyles.com, Inc. (In re Affinitylifestyles.com, Inc.)*, 2023 WL 4761634, at *2 (D. Nev. July 25, 2023) ("[A]s courts recognize a broad definition of what is core may pose constitutional problems, the catch-all provisions in § 157 are construed narrowly."); *see also Celsius Network*, 670 B.R. at 392-93 ("That [debtor's] claims might have a conceivable effect on the estate . . . does not transform the Adversary Proceeding—which otherwise involves [] federal securities claims arising from pre-petition conduct and unrelated to the Bankruptcy Code—into a core proceeding.").

**2. The Bankruptcy Court Likely Lacks Jurisdiction Over Class Claims**

The efficiency factor also favors withdrawal because the Bankruptcy Court likely lacks jurisdiction over a substantial portion of Plaintiffs' claims. This Complaint is styled as a putative class action in which Plaintiffs seek to recover from Defendants on behalf of all putative class members, *i.e.*, "all persons and entities that transacted in the publicly traded securities of Meta Materials" during the Alleged Class Period. Compl. ¶ 166. But the Bankruptcy Court likely lacks subject matter jurisdiction over the claims of these absent class members and those of the Non-Debtor Plaintiff Collins because "[t]he disposition of such claims, regardless of their result, could have no conceivable effect upon [the debtor's] bankruptcy case." *Porter v. NationsCredit Consumer Disc. Co. (In re Porter)*, 295 B.R. 529, 540-41 (Bankr. E.D. Pa. 2003) (concluding no jurisdiction over class claims where the debtor "proposes to prosecute claims held by non-debtor third parties against non-debtor defendants" and the putative class "[w]as not limited to debtors (either past or present)"); *cf. Morschauser v. Cont'l Cap. LLC (In re Devore Stop)*, 2024 WL 654914, at *1 (9th Cir. Feb. 16, 2024) (adversary proceeding not "related to the underlying bankruptcy case because . . . whether or not [plaintiff] succeeds in his state-law claims, the estate will receive no assets").

Just as in *Porter*, the putative class members in the Complaint and the Non-Debtor Plaintiff are non-debtor investors of Meta Materials and any recovery achieved for the absent class members and the Non-Debtor Plaintiff "belong[s] to those class members," not the Debtor's estate. 295 B.R. at 540-41. Their alleged class claims therefore cannot be "classified as 'related to' a bankruptcy case simply because the [Debtor] filed [its] own bankruptcy case and purports to hold similar claims." *Id.*

Because the Bankruptcy Court likely has no jurisdiction over the absent class members' and the Non-Debtor Plaintiff's claims, leaving this Adversary Proceeding in the Bankruptcy Court would potentially result in parallel litigations, with the Trustee's individual action proceeding in the Bankruptcy Court and a separate class action filed elsewhere with identical allegations. Defending both actions would impose significant, unnecessary costs on Defendants to say nothing of the unnecessary consumption of judicial resources in resolving the threshold jurisdictional issue. Withdrawing the reference of this Adversary Proceeding now will avoid both the subject matter jurisdiction complication and the potential "duplicative proceedings in both courts concerning the same underlying allegations" since the District Court's jurisdiction extends beyond what is provided in the Bankruptcy Code and the District Court can undoubtedly hear this putative class action. *Gens v. Colonial Sav.*, *F.A.*, 2012 WL 993713, at *3 (N.D. Cal. Mar. 23, 2012).

**B. Putative Class Action Status and Demand of Jury Trial Favor Withdrawal**

Two additional factors—that this Adversary Proceeding is a putative class action and that the Complaint demands a jury trial—also favor withdrawal.

*First*, to the extent that the Bankruptcy Court has jurisdiction over the class claims, "the fact that this case is a class action suit counsels against leaving it with the bankruptcy court." *Lara v. Casimiro (In re Casimiro)*, 2006 WL 1581897, at *6 (E.D. Cal. June 6, 2006). Courts have recognized that a case's status as a class action is another factor supporting withdrawal. *See, e.g.*,

*Malone v. Norwest Fin. Cal., Inc.*, 245 B.R. 389, 400 (E.D. Cal. 2000) ("Although bankruptcy courts are empowered to oversee class actions, there is little reason to assume that they regularly do so. On the other hand, the district court has long experience in the management of this complex class of litigation."); *In re Casimiro*, 2006 WL 1581897, at *6 ("Having the bankruptcy court handle a class action suit would indeed impose a burden on that court and would not be an efficient use of judicial resources.") (quotation and citation omitted).

*Second*, the Complaint demands a jury trial on all counts. While not dispositive at this stage, this is another factor in favor of withdrawal because "a bankruptcy court is empowered to conduct jury trials only with the express consent of the parties." *Malone*, 245 B.R. at 400-01 (finding jury demand supported permissive withdrawal). Defendants do not consent to the bankruptcy court presiding over a jury trial. *See Taxel v. Elec. Sports Rsch. (In re Cinematronics, Inc.)*, 916 F.2d 1444, 1451 (9th Cir. 1990) ("[W]here a jury trial is required and the parties refuse to consent to bankruptcy jurisdiction, withdrawal of the case to district court is appropriate.").

**C. No Factor Weighs Against Withdrawal**

The other factors—including "uniformity of bankruptcy administration, [and] the prevention of forum shopping"—are not at issue here. There is no forum shopping concern as Defendants filed this motion to withdraw the reference before any substantive motion or pleading has been filed with the Bankruptcy Court, let alone any ruling from the court on the Adversary Proceeding. *See In re Casimiro*, 2006 WL 1581897, at *5 (no forum shopping concerns where "Plaintiffs made a motion to withdraw before any motion for remand was made by Defendants [before the bankruptcy court]" and "there has been no substantive ruling from the bankruptcy court"). Withdrawal also has no effect on the uniformity of the bankruptcy administration since the Complaint involves only non-core issues unrelated to the Bankruptcy Code. *Celsius Network*,

670 B.R. at 394 (finding "this factor is neutral because the claims at issue are non-core claims that do not arise under bankruptcy law") (quotation and citation omitted).

Given that the factors overwhelmingly favor withdrawal, permissive withdrawal is also warranted.

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court withdraw the reference of the above captioned Adversary Proceeding so that all matters are heard before the District Court and grant such other relief to which Defendants may be entitled.

DATED: September 5, 2026

**MCDONALD CARANO LLP**

*/s/ Ryan J. Works*
Ryan J. Works (NSBN 9224)
Jimmy F. Dahu (NSBN 17061)
2300 West Sahara Avenue, Suite 1200
Las Vegas, NV 89102
Tel: (702) 873-4100
rworks@mcdonaldcarano.com
jdahu@mcdonaldcarano.com

**SIMPSON THACHER & BARTLETT LLP**

Jonathan K. Youngwood (*pro hac vice forthcoming*)
Meredith Karp (*pro hac vice forthcoming*)
Shuhao Fan (*pro hac vice forthcoming*)
425 Lexington Avenue
New York, NY 10017
Tel: (212) 455-2000
jyoungwood@stblaw.com
meredith.karp@stblaw.com
shuhao.fan@stblaw.com

*Attorneys for Citadel Securities LLC*

**SEMENZA RICKARD LAW**

/s/ *Jarrod L. Rickard*
Jarrod L. Rickard (NSBN 10203)
10161 Park Run Drive, Suite 150
Las Vegas, NV 89145
Tel: (702) 835-6803
jlr@semenzarickard.com

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

Andrew G. Gordon (*pro hac vice forthcoming*)
Audra J. Soloway (*pro hac vice forthcoming*)
Alison R. Benedon (*pro hac vice forthcoming*)
Daniel S. Sinnreich (*pro hac vice forthcoming*)
1285 Avenue of the Americas
New York, NY 10019
Tel: (212) 373-3000
agordon@paulweiss.com
asoloway@paulweiss.com
abenedon@paulweiss.com
dsinnreich@paulweiss.com

**DAVIS WRIGHT TREMAINE LLP**

Michael V. Rella (*pro hac vice*)
James K. Goldfarb (*pro hac vice forthcoming*)
Shanaye Carvajal (*pro hac vice*)
1251 Avenue of the Americas
42nd Floor
New York, NY 10020
Tel: (212) 489-8230
michaelrella@dwt.com
jamesgoldfarb@dwt.com
shanayecarvajal@dwt.com

*Attorneys for Virtu Americas LLC*

**GREENBERG TRAURIG LLP**

*/s/ Michael R. Hogue*
Michael R. Hogue (NSBN 12400)
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Tel: (702) 938-6909
hoguem@gtlaw.com

Sylvia E. Simson (*pro hac vice forthcoming*)
Alan J. Brody (*pro hac vice forthcoming*)
One Vanderbilt Avenue
New York, NY 10017
Tel: (212) 801-9200
sylvia.simson@gtlaw.com
brodya@gtlaw.com

*Attorneys for Anson Funds Management LP and Anson Advisors, Inc.*